Statement
MONROE, J.
Plaintiff alleges that on or about October 10, 1891, she made a manual gift of $11,500 to Mrs. Catherine Larner, then wife of Wm. H. Peters, in consideration of Mrs. Peters undertaking to give her a home, maintain her during her life, and bury her when dead, and that said gift was so made with the knowledge and consent of said Wm. I-I. Peters; that the donee subsequently turned the money given to her over to her two daughters, Clara Margaret, now wife of Wm. D. Gardiner, and Catherine Larner Peters, without consideration, and that her said daughters invested the same in their own names, in certain real estate (which is described); that sometime later, and in anticipation of her marriage, Clara Margaret Peters, without consideration, conveyed said real estate, or her apparent interest therein, to her sister, Catherine Larner Peters, in whose name the title now stands. Plaintiff further alleges that, in making said donation, she devested herself of all her property and reversed nothing for her own subsistence, to the knowledge of the parties named and in violation of the prohibition contained in article 1497, Civ. Code, and that the same was, and is, null and of no effect; that thereafter she went to live with Mrs. Peters and her family and continued to live with them until May 19, 1903, when, because of the ill treatment to which she was subjected, she was compelled to go elsewhere, and she believes, and so charges, that Mrs. Peters is without means to reimburse the amount donated to her, and that she turned the same over to her daughters, who so received it with the fraudulent purpose of placing it beyond plaintiff’s reach, thereby committing a breach of trust; and that plaintiff is entitled to have said donation annulled and to follow the fund which was the subject thereof and charge the property in which it was invested with a resulting trust in her favor. She therefore prays for citation to, and for judgment against, the parties named as defendants, in solido, in the sum of $11,500 with interest from October 10, 1891, until paid, and with recognition of an equitable lien and privilege on the property described in the petition, and she further prays that said property be sold to satisfy her said claim, and that she be paid from the proceeds.
The defendants, after pleading, by way of exception, that plaintiff’s petition discloses no legal ground and no cause of action (which exceptions were overruled), answered, separately, as follows:
Mrs. Peters denies that plaintiff ever made any donation to her, personally, but admits that she paid to her (defendant’s) husband, through defendant, the sum of $11,300, as a payment under a commutative contract, entered into by parol, between plaintiff on the one part, and W. H. Peters, defendant’s said husband, represented by' defendant, of the other part, whereby said Peters agreed, in consideration thereof, to admit plaintiff to. their home, to maintain her during life, and at her death to bear the expense of her funeral. Defendant denies that said sum was all that plaintiff possessed and alleges that, pursuant to the contract so made, plaintiff was- *106 maintained, at an expense of $6,624, from Oct. 10, 1S90, until about May 20, 1903, when, without previous notice, she removed from the home which had been thus provided for her, and has not since resided there. Further answering, defendant alleges that, having acquiesced in the execution of gaid contract and having enjoyed its benefits for more than 12 years, plaintiff cannot now be heard to assail its validity, and that she has no standing in court to bring this suit until she has restored, or offered to restore, said benefit, or the equivalent thereof, and she further pleads the prescription of 1, 3, 5, and 10 years, and prays for judgment in her favor.
Mrs. Gardiner and Miss Catherine Larner Peters deny, generally and specially, the allegations of plaintiff’s petition, and also plead prescription.
By an amended answer, the defendants plead estoppel and res judicata upon the basis of certain alleged judicial admissions of the plaintiff and a certain judgment, and the plaintiff, thereafter, filed like pleas upon a like basis. In support of the pleas of estoppel and res judicata, filed in their behalf, defendants’ counsel, upon the trial of the case, objected to the introduction in evidence of certain answers given by Mrs. Peters to interrogatories propounded to her as garnishee in a certain suit of Hoffman v. Peters, and to all other evidence which might thereafter be introduced in support of the plaintiff’s demands; the grounds of objection being:
(1) That the alleged donation, if any exist, is onerous in character, and can be established only by authentic act.
(2) That plaintiff is estopped to prove a donation of any kind by her judicial averments and testimony to the contrary, made and given in the suit of said plaintiff against Miss Catherine L. Peters et al., and by the judgment therein rendered, as also by her testimony in the suits of Hoffman v. Ackerman (Mrs. Catherine L. Peters et al., Garnishees) and Hoffman v. Ackerman et al., and the counsel further offered the record and testimony in the suit of Ackerman v. Peters and the testimony given by Miss Ackerman in the suits of Hoffman v. Ackerman (Mrs. Catherine E. Peters et al., Garnishees), and Hoffman v. Ackerman et al. To the offer so made, the counsel for the plaintiff objected, on the grounds “that parties are not bound by allegations unsuccessfully pleaded or by evidence given by them in support of said allegations ; that the defendants are estopped by their admissions contained in their testimony and answers to interrogatories, now tendered and offered in evidence by the plaintiff, because they successfully pleaded and established by their testimony the defenses urged by them in said previous cases; that the defendants cannot object to the admission of their declarations under oath, made in other suits, and cannot be heard to object to their own sworn explanations of their own transactions, long since past.” These objections were overruled by the court, as going to the effect, and the evidence was admitted. Thereafter, however, the court overruled the defendants’ pleas of estoppel and res judicata, and counsel for plaintiff offered the testimony given by Mrs. Peters, Miss Catherine L. Peters, Miss Mary L. Peters, and Mrs. Gardiner in the cases mentioned, to which counsel for defendants made further objections, which were also overruled.
At a subsequent stage in the proceedings, counsel for plaintiff having in the meanwhile filed their plea to that effect, objected, upon the ground that the defendants were es-topped, to the evidence offered in their behalf, and the court, overruling a motion to strike out, maintained said plea in so far as to exclude “all evidence, offered in behalf of the defendants, tending to contradict, vary, explain, or alter their previous judicial declarations or admissions,” which ruling was applied to certain offers on behalf of defend *108 ants of testimony explanatory of that previously given by them tending to show that Mrs. Ackerman had turned over all of her property to Mrs. Peters, and to offers of testimony, previously given by Miss Ackerman in support of a theory, as to her relations with Blrs. Peters, at variance with that upon which this suit is brought; an objection to this latter offer being sustained on the farther ground “that that testimony [had] has been declared, by the solemn judgment of the highest court of the state, to have been unfounded in fact, and, hence not binding on the said Miss Ackerman.” These objections and rulings may be made more intelligible by the following resumé of the pleadings, testimony, etc., to which they refer, to wit:
In October, 1890, Leonard Hoffman filed a suit (No. 31,247 of the docket of the civil district court), in which, in June, 1891, he obtained judgment against Bliss Ackerman for $700 and interest, and, in February, 1901, he issued execution and garnisheed Mrs. Peters and Miss Catherine Peters and also Bliss Mary L. Peters (another daughter of Blrs. W. H. Peters), and propounded to them the usual interrogatories, to which they answered, “No,” without qualification or explanation, save Mrs. Peters, who added, “I am not indebted to her in any sum. About 10 years ago or more, I promised the defendant, Bliss Catherine V. Ackerman, to support and care for her and furnish her with the necessaries for her maintenance during life.”
Hoffman filed a rule traversing the answers so made, and Bliss Ackerman, together with Mrs. Peters and her daughters, were called as witnesses, but, after they had given their testimony, the rule was discontinued and the litigation was transferred to an action (No. 64,203) brought by Hoffman, in which he alleged that, pending his original suit, and before he had obtained judgment therein, the defendant, Miss Ackerman, in furtherance of a fraudulent conspiracy to-screen her property from his pursuit, had transferred her real estate to Miss Clara Peters and had furnished the means with which other property hud been acquired, in the name of the Misses Peters, but for her (Miss Ackerman’s) account, and that Bliss Clara Peters, in anticipation of her marriage,, had subsequently put the property acquired in her name in the name of Bliss Catherine Peters, against whom alone he prayed for judgment, decreeing such property to be subject to his execution. By reason of the fact that Miss Clara Peters (then, and now, Mrs. Gardiner) was not made a party defendant, the issue in the case, so far as the property was concerned, was confined to certain real estate which had been acquired by Bliss Catherine Peters, directly, from one Meyers. That issue was, however, considered sufficient to open the door to further inquiry into the relations existing between Miss Ackerman and the Peters family, and she and they were again examined as witnesses.
In the cases thus referred to, Miss Ackerman testified that, upon the death of Henry F. Hall, in 1890, she was living at the corner of Orange and Annunciation streets, in a house of which she was the owner, and that, after Hall’s death, in the month of October, she went to live with the Peterses, with whom she had long been intimate; that by the advice of Blrs. Peters, in order to screen it from Hoffman, who had brought suit against her, she made a simulated conveyance of her Orange street property to Miss Clara Peters; that, having come into possession, after paying certain charges, imposed upon her as universal legatee of Hall, of the sum of $17,750, she allowed the same to remain in the bank for 24 hours, and then, for the same reason and by the same advice, withdrew it and carried it to the Peters domicile, where she was residing; that *110 the Peterses owned certain property which was burdened with a mortgage, and. that, as an act of friendship, she offered to lend them $3,000 with which to pay the debt, and, in fact, did lend them that amount, receiving therefor the unsecured note of Miss Mary L. Peters, one of the daughters; that she disbursed other sums and had left $11,300, which, it was agreed between her, Mrs. Peters, and the daughters of the latter (in order to keep it from I-Ioffiman and to make a profit for themselves), should be invested by them in real estate, titles to which should be taken in the name of one or the other of the Misses Peters; it being further agreed that the profits which might accrue from such investments should be equally divided between them. She further testified that said amount was accordingly invested in real estate acquired in the name of Miss Clara Peters, and by her subsequently, and in anticipation of her marriage, transferred to Miss Catherine Peters, and in other real estate, acquired directly in the name of Miss Catherine Peters. Miss Ackerman further testified that, when she went to the Peterses to live, she said to Mrs. Peters, “When I die, what is left is for you. I have no one else to leave it to. But that was all that was said.” Again, she testified that it was understood that she was to be charged $15 a month for her board and lodging, which amount was to be considered compensated by the interest to become due her on the loan of $3,000, which bore interest at the rate of 6 per cent., and that she was to be supplied, from the proceeds or revenues of the other investments, or. from her own funds, with what money she needed for expenses. She denied that there was any agreement to the effect that she should turn over her money to any of the Peters family in consideration of their furnishing her a home, maintaining, and burying her.
Mrs. Peters testified, in the garnishment proceedings, that Miss Ackerman proposed to her (quoting the language of the witness) “that all the property she had, she would, give to me in consideration of my caring for her during the balance of her life”; that, after consulting her husband, she, Mrs. Peters, accepted the proposition, and that Miss Ackerman thereafter gave her $11,300, was furnished with a home, and had her wants supplied, agreeably to the contract as thus made.
Being asked, “How does she [Miss Ackerman] obtain her clothes?” the witness answered, “If she wants them, I give them to her.” Being asked, “Where does she get the money from?” the witness answered, “She asks me and I supply her wants. When she wants anything, I have to give it to her.” Being asked, “Has she any other property in the world except this money that she gave you?” the witness answered, “I don’t know.” The witness further testified that the $3,000 loaned to Miss Mary L. Peters was so loaned to enable her to pay off a mortgage for that amount which rested on certain property on Camp street, and Old Camp streets, which appears to have been conveyed to her by her parents; that Miss Mary Peters turned the money Over to the witness, and that it was used by her for another purpose. Being asked, “Then you consider that money, also, went into the agreement that Miss Ackerman made with you?” she answered, “Yes, she said she gave me all she had and she could give nothing more.”
Mrs. W. D. Gardiner (formerly Miss Clara M. Peters) testified, in the same proceeding, that Miss Ackerman “wanted to come and live with the family; she said she was getting old and wanted to have a home as a member of the family, and, in consideration, of that, as an inducement, she was willing to turn over the money and all that she had to my mother, and all that she asked for was her living and her wants supplied in moderation.” Being asked, “Did’ Miss Ackerman turn over all she possessed in the world to *112 your mother?” she answered, “Yes. Q. All that she possessed? A. Yes; all that she possessed.” By Mr. Pierson (counsel representing garnishees) “You mean by that, all the money that she had? A. That is what I mean.” The witness further testified that about 1890, she received some money from lier mother, she thought about $2,000, though she was unable to remember accurately, and that she used it in the purchase of real estate. In July, 1901, Miss Ackerman instituted a suit (No. 65,475 of the civil district court) against Miss Catherine L. Peters and Miss Clara M. Peters, wife of W. D. Gardiner, praying to be decreed the owner of the real estate which was the subject of the controversy in the then pending suit of Leonard Hoffmann v. C. Y. Ackerman & C. L. Peters (No. 64,203), and of certain other real estate, and praying that the defendants be condemned to account for the rents and revenues thereof; her cause of action being set forth, substantially, as follows, to wit: That prior to the month of October, 1890, she had been the owner of a comfortable home on the corner of Orange and Annunciation streets, and that, on the 22d day of that month, she had received $20,000 in cash, as universal legatee of Henry E. Hall; that shortly thereafter, at the earnest solicitation of Mrs. Peters and her three daughters, she broke up her establishment and went to live with them; that at about that time, Leonard Hoffman brought suit against her, in her capacity as universal legatee of Hall, upon a claim amounting to $1,400, upon which he obtained judgment for $700; that she considered the claim and judgment unjust and was anxious to avoid paying it, and in order to do so, acting upon the advice of Mrs. Peters and her said daughters, she transferred her Orange street property to Miss Clara Peters, at a nominal price which she, herself, furnished the money (nominally) to pay; that, acting upon the same advice, and for the accomplishment of the same purpose, i. e., to screen her property from the pursuit of Hoffman, it was agreed between her and Mrs. Peters and her daughters that the balance of her cash should be invested in real estate, the title to which should be taken in the-names of Misses Clara M. and Catherine L. Peters, and that certain real estate (which she describes) was purchased, pursuant to said agreement, in the name of Miss Clara M. Peters, and, in anticipation of her marriage, subsequently . conveyed by her to Miss Catherine L. Peters.
“That said Miss Catherine Larner Peters has had the management and administration of all of petitioner’s hereinbefore described property (for her convenience, account, and benefit) from the time of its acquisition, first, by said Clara M. Peters, and secondly, by herself, as above set forth, and did, from time to time, render and deliver unto petitioner detailed, written statements and accounts of her administration * * * that * * * said Miss Catherine Larner Peters has refused to surrender, or transfer, or convey to petitioner all or any portion of said property, * * * and has refused to give her a further accounting therefor, or pay her. the rents and revenues * * * thereof * * * leaving her absolutely without any means of support * * * compelled to reside * * * at the place of business and residence of Mrs. William H. Peters and her daughters, in a small back gallery room. * * * ” Wherefore she prayed for judgment, etc.
To this demand the defendants pleaded estoppel by deed and conduct, and answered, denying the plaintiff’s allegations, save in so far as specially admitted, and asserting the verity and legality of the transactions with which they were connected. Upon the trial of the ease, Miss Ackerman testified to much the same effect as on previous occasions. Miss Peters and Mrs. Gardiner, answering interrogatories on facts and articles, and subsequently testifying as witnesses for the plaintiff, stated that Miss Ackerman had *114 given her money to their mother in consideration of the latter’s agreeing to maintain her in their house, etc., that Mrs. Peters had turned the money over to them, and that they had invested it in the real estate described in the petition.
In the suit brought by Hoffman (No. 64,203), there was judgment in the district court for plaintiff, decreeing the property which had been acquired by Miss Catherine L. Peters from Meyers to be subject to the judgment which he (plaintiff) had obtained against Miss Ackerman, to the extent of an undivided one-third interest, subject to the existing mortgages, and Miss Peters appealed to this court, where the judgment so rendered was reversed, on the ground that the effect of the parol evidence relied on by the plaintiff would be to transfer the square of ground in question from Bliss Peters to Miss Ackerman, and that, in view of the fact that the sale from Meyers to Miss Peters was not attacked, such •evidence was improperly admitted. Hoffmann v. Ackermann, 110 La. 1076, 35 South. 293.
In the action brought by Miss Ackerman against Miss Peters and Mrs. Gardiner (No. ■65,475), there was judgment for plaintiff, decreeing her to be the owner of all the property claimed by her and reserving her right to demand an accounting with respect to the revenues, which judgment was also reversed ■on appeal; this court holding that the plaintiff could not recover the property upon the basis of her allegations that it had been acquired In the name of Miss Peters for the purpose of screening it from the pursuit of plaintiff’s creditors, and, even if it were otherwise, that the answers of the defendants to the interrogatories on facts and articles failed to show title in the plaintiff, and could not be eked out by parol evidence. In conclusion, however, the court said: “The record informs us that plaintiff continues to reside with Mrs. Peters, who, under the evidence, unquestionably owes to plaintiff suitable maintenance and support for life, or the equivalent in dollars and cents,” and there was judgment rejecting plaintiff’s demands, but “reserving, otherwise, whatever rights she may have in the premises.” Ackerman v. Peters, 113 La. 156, 36 South. 923.
In the instant case, notwithstanding that the interlocutory rulings of our learned brother of the district court were favorable to plaintiff, there was judgment for the defendants, and the plaintiff has appealed.
Opinion.
Estoppel, as predicated upon the maxim “nemo allegans suam turpitudinem audiendus est,” it may be said, is a doctrine which forms part of the policy of the law by reason of its recognition by the courts, but, as the law itself is the paramount authority as to its policy, it follows that in those matters concerning which it speaks definitely, it cannot be controlled by an estoppel, which is but the creature of its creature. The law of the state and the policy of the law as to the question here- at issue are declared, at one and the same time, as follows, to wit:
“The donation shall, in, no case, divest the donor of all his property; he must reserve to himself enough for subsistence; if he does not do it, the donation is null for the whole.” Giv. Code, art. 1497.
Construing this article, our predecessors in this court have said:
“The terms of this law appear to throw a certain incapacity upon every citizen to dispose and divest himself of all his property by donation inter vivos, and declare that such donation shall be null (not reducible) if he has not reserved to himself enough of his property for subsistence * * * Tgat the nullity pronounced * * * is based upon motives of public order, and that the act done in contravention of its prohibition is against good morals, can hardly be doubted, and will be easily understood.” Lagrange v. Barre et al., 11 Rob. 302.
To hold, then, that in spite of the law as-thus construed, a donation made in violation of its prohibitory and mandatory directions must be maintained, because made to accomplish an illegal purpose of the donor, would be to subordinate the law and the *116 public policy of the state, as definitely declared by the lawmaking power, to the will, or infirmity, of the citizen. The alleged estoppel, as predicated upon the plaintiff’s .judicial admissions, is based on Oiv. Code, art. 2291, which reads:
“The judicial confession is the declaration which the party, or his special attorney in fact, makes, in a judicial proceeding. It amounts to full proof against him who has made it. It cannot be divided against him. It cannot be revoked unless it is proven to have been made through an error in fact. It cannot be revoked on a pretense of an error of law.”
This provision of law is, however, to be considered in its relation to those which determine the capacity of the individual and the validity of his acts. No one would pretend that the minor, incapable of alienating his property, would be estopped, by reason of his judicial admission to the contrary, to allege that he had done so, and the same rule applies to the major, with respect to a donation, omnium bonorum, made by him, as to which the law imposes upon him the incapacity of the minor. “An acknowledgment can never be invoked to maintain a condition or state of things created in violation of a prohibitory law.” Insurance Co. v. Harbor Protection Co., 37 La. Ann. 236; Succession of Jacobs, 104 La. 447, 29 South. 241; Laurent, Civil Law, Vol. 20, pp. 199, 200, 204; Larombierre, Theory of Obligations, Vol. 5, 404, 405; Demolombe, Code Napoleon, Vol. 30, ppv 428, 429; Fusier-Herman, t. 3, p. 643, No. 57.
The alleged estoppel, as predicated upon the authority of the thing adjudged, is unsupported by the fact; the judgment relied on not having been rendered between the same parties or upon the same cause of action. Besides which the court, in its opinion, recognizes that the plaintiff has some rights, according to the theory of the ease now propounded, and, in its decree, reserves “whatever rights she may have.” Finally, it may be said on this point that the defendants are as much estopped to deny the donation set up in the petition as the plaintiff is to allege it; and that, if the estoppels were otherwise effective, they should both, or all, by reason of that fact, and in the interest of a correct solution of the difficulty in which, they have become involved, be liberated-therefrom.
On their plea of prescription, the counsel for the defendants contend that the contract sued on is not a donation, onerous or otherwise, but a commutative contract, the action upon which is personal and prescribed by 10-years, under Oiv. Code, arts. 2221, 3544, and, alleging that the plaintiff sets out a commutative contract and calls it a manual gift, they argue that a manual gift is one made by hand, with the intention of bestowing a-gratuity, and hence is not, and cannot be, an' onerous donation.
The lexicographers tell us that a donation is a gift, and that a gift is something which is given freely and without consideration, but that is not altogether the law of this state. According to the Civil Code, there are three-kinds of donations, viz., gratuitous donation, the onerous donation, and the remunerative donation; the first being the free gift defined by the lexicographers; the second being a gift burdened with charges imposed by the donor, and the third being a gift the object of which is to recompense for services rendered. Civ. Code, art. 1523. In either-ease the donation must be made by authentic act, and must be accepted by the donee, “in precise terms.” Civ. Code, arts. 1536, 1538, 1540.
Whilst, therefore, the onerous donation is a contract which imposes reciprocal obligations upon the parties and in which what is given, done, or promised by one party, may, in some instances, be considered as equivalent to, or a consideration for, what is done, given, or promised, by the other, it is, never *118 theless, a donation, within the terminology of the law, and is governed by the rules applicable to donations, “when the value of the object given exceeds by one half that of the charges, or services.” Civ. Code, art. 1526. Between the article 1538, requiring that the donation, inter vivos, even of movables, shall be made by authentic act, and article 1540, requiring that all donations shall be accepted, we find article 1539, which, reads:. “The manual gift, that is the giving of corporeal, movable, effects, accompanied by real delivery, is not subject to any formality”—that is to say, it need not be made by authentic act. We do not, however, understand from this that the manual gift may not be gratuitous, or onerous, or remunerative, or that if when, in making it, the donor fails to reserve enough for his subsistence, it does not fall within the prohibition of article 1497, and, as contracts whereby individuals have transferred their property to others, burdened with the charge that they should be maintained during their lives, have heretofore been dealt with by this court as onerous donations, we see no sufficient reason for pursuing a different course in this case,- although we are inclined to think that it would make no difference for the purposes of the question under consideration.
In Lagrange v. Barre et ah, supra, the plaintiff had, by authentic act, donated his land and slaves to the husband and father of the defendants, without, as he alleged, reserving anything for his subsistence, on the condition, among others, that the donee should furnish' him with food, bedding, clothes, fire, lights, and medicine, free of any charge, during his life, and, more than five years afterwards, he brought suit against the widow and heirs of the donee to annul the contract, on the ground that he had thereby devested himself of all his property, to which action the defendants pleaded the prescription of five years established by Civ. Code, art. 3507, now Rev. Civ. Code, art. 3542, against actions for the nullity of contracts, testaments, or other acts. In dealing with the question thus- presented, this court, inter alia, held that, the contract having been entered into in violation of a prohibitory law, enacted in the interest of public order, was absolutely void, and that the nullity could not be cured by the prescription pleaded. See, also, Harris v. Wafer, 113 La. 822, 37 South. 768.
To similar effect is the decision in Vaughan v. Christine, 3 La. Ann. 328, in which a partition was attacked as having been illegally made, and in which the eburt, through Rost,. J., said:
“The distinction which exists in relation to absolute nullities is broad and easily defined.. If the contract is tainted with a nullity resting on motives of public policy, or having its origin in the ■ respect due to good morals; if it be on^¡ of the conventions prohibited by article 11 of the Code, it is an absolute nullity, to which the law perpetually resists; it is not susceptible of ratification, and the prescription of five-years is inapplicable to it. A contract by the-father or the husband to surrender the paternal or the marital power, an obligation to pay money for the commission of a crime, or for-doing an immoral act, the partition of a succession before the succession is open, are instances of such conventions. * * * The other-class of nullities are those established for the-interest of individuals, and in relation to these the rule in onerous contracts is without exception, that the party in whose favor they are-established may render valid the act in which they are found by his ratification, express or implied.”
It need only be added that the alleged contract out of which this suit has arisen belongs to the class first mentioned by the-court; that it was void, ab initio, and, not being susceptible of ratification, has acquired no validity by the lapse of time; that it is, therefore, as unenforceable now as at the-beginning, and that to allow matters to stand as they are would be to permit individuals to accomplish, by their conventions, the evil which, in the interest of public morals and good order, it is the purpose of Civ. Code, art. 1497, to guard against.
The learned counsel for the defendants call our attention to the fact that the action to- *120 recover damages sustained by reason of a-larceny is prescribed in one year, and says that larceny is not only prohibited, but is a felony. That is true; but the question whether the owner of the stolen property shall re-, cover it or its value is a matter of private concern, and the lawmaker has chosen to fix a limit to the time within which he shall make the demand. It may be said, and is ■said, with much earnestness, that either in article 3542, establishing the prescription of five years against actions for the nullity of “contracts, testaments, or other acts,” or in .article 2221, establishing the prescription of 10 years against actions for the rescission of agreements, where no other prescription is provided, or in article 3544, establishing the prescription of 10 years against all personal actions, the lawmaker has provided a prescription which applies to this case. But those articles were in the Civil Code when the cases of Lagrange v. Barre et al. and Vaughan v. Christine were decided, and, whilst the opinions handed down referred, in terms, ■only to Civ. Code, art. 3507 (now Rev. Civ. Code, art. 3542), they are equally applicable, for the purposes of a ease such as this, to the others. Whether the interpretation thus announced was correct or incorrect, it remained unchallenged for more than 20 years, .and then, in 1890, the lawmaking department •of the government, presumably accepting it, ■re-enacted the articles in question, in totidem verbis. Under these circumstances, if any change be needed, we are of opinion that it should be made by the General Assembly.
It is said that Mrs. Peters is not liable because, at the date of the alleged contract, she was living in community with her husband, and that the obligation arising from the contract is an obligation of the community. The evidence, however, shows that Miss .Ackerman dealt exclusively with Mrs. Peters; the fact being that, in the Autumn of 1890, Mr. Peters gave up his business, and that the .affairs of the house and of the store were managed by the ladies of his family. Beyond this, it appears from the testimony of the defendants that the money here claimed was given to Mrs. Peters, burdened with the charge that she should maintain the donor, who appears to have had no dealings with Mr. Peters whatever, and that Mrs. Peters had it invested in the names of her daughters, so that it inured to her separate benefit and was used by her as she pleased, and, in the course of her testimony, given several years after the death of her husband, who died in 1898, she states repeatedly that the money was hers, and acknowledges time and again her liability under the contract, as she understood it. To hold now that she incurred ño liability would be to enable her to practice a fraud.
It is said that plaintiff can recover nothing from Miss Catherine Peters, but it is conceded by the defendants that the family were as one; Mrs. Peters being the controlling spirit, and Miss Catherine Peters, the chief executive, or business manager; that Miss Catherine Peters participated in the deliberations and was fully informed of the conditions upon which Miss Ackerman entered the family and turned over her money; that the money so turned over was invested in real estate in the names of Misses Clara and Catherine Peters; that the real estate thus acquired in the name of Miss Clara Peters was subsequently, in anticipation of her marriage, and without valuable consideration, conveyed to Miss Catherine Peters, and that Miss Catherine Peters, without having paid a dollar for it, now holds, in her name, all of the property in which the money of Miss Ackerman was invested, as also the property on Orange street which was Miss Ackerman’s home. We are bound to presume that Miss Catherine Peters, who was informed, and appears to have believed, that Miss Ackerman was turning over to Mrs. Peters all of her means, knew that, in so doing, she was acting in violation of law; that Mrs. Peters could *122 not legally receive the money from Miss Ackerman, and that she (Miss Catherine Peters) could not, under the circumstances, legally possess herself of it and invest it for her own benefit. As the matter stands, it is almost as if she had the money, itself, thus illegally acquired, in her hands, and the circumstances of the case, i. e., the care that was taken to keep it from becoming involved in the community which existed between Mrs. Peters and her husband, or in that which subsequently resulted from the marriage of Miss Clara Peters to Mr. Gardiner, strongly suggests the idea that the property which she holds is held, either wholly or in part, for the account of her mother. At all events, she can have no reason to complain that, to the extent, at least, that it is represented by the property in question, she is called on to return the money which she must be presumed to have known that her mother had no . legal right to receive, and hence had no right to give her, or invest in her name.
Mrs. Gardiner’s position is different. She, like her sister, allowed her name to be used in the acquisition of the property, but, with the approval of Miss Ackerman, or, certainly, with her knowledge and without objection on her part, she has parted with it, so far as the record discloses, without benefit or profit to herself, and, being no more responsible for Miss Ackerman’s present position than Miss Ackerman herself, and holding neither her money nor the property purchased with her money, she is not liable to her upon any hypothesis.
It is said that plaintiff can have no standing to prosecute this suit until she shall first have returned the benefits, or the equivalent in money of the benefits that she has received under the contract, or has offered to return same, but, if it be true, as the defendants have testified, that Miss Ackerman turned over all that she had to them, or to Mrs. Peters, and that, for the last 12 years or more, she has had no other money than such as she has obtained from them in small sums, it is evident that such a tender is impossible, and the law does not require impossibilities. In the somewhat similar ease of Harris v. Wafer, 113 La. 822, 37 South. 768, it wfis held that a tender was not required. The theory propounded by the plaintiff’s counsel, that this is in the nature of a real action and that the money here claimed can be followed as a trust fund and as a charge, imposing an equitable lien upon the real property in which it was invested, is, we think, without substantial foundation in our law. It is quite certain that there are no liens in Louisiana save such as are created by law, and that the law gives no lien In a case such as this.
We have purposely postponed until now the consideration of the ruling of the judge a quo, excluding the testimony offered on behalf of defendants. The plaintiff, after considerable progress had been made in the trial, filed a plea setting up that defendants were estopped from offering testimony in support of their defenses by the pleadings and admissions contained in their answers to interrogatories and by the testimony given in the cases of Hoffman v. Ackerman, Peters, Garnishees (No. 31,247), and Hoffman v. Ackerman (No. 65,475), alleging that “said pleadings and declarations” had “been successfully pleaded in said causes and sustained by said judgments therein rendered by the Supreme Court, which she pleads as res adjudicata.” Upon a motion to strike out this plea, the court made the following ruling:
“The court overrules the objections made by defendants’ counsel to the filing by plaintiff of the plea of estoppel and maintains the said plea of estoppel, and excludes all evidence on the part of the defendants tending to contradict, vary, or explain, or alter, their previous judicial declarations, or admissions.”
Counsel for defendants then offered to put Mrs. Peters and Mrs. Gardiner on the stand to explain the answers or testimony given by them in the cases referred to and to *124 show that Miss Ackerman, in point of fact, had other property than the $11,300 turned over by her to Mrs. Peters, which offer was objected to, and the testimony was excluded under the ruling already made. Defendants also offered Mr. Gardiner as a witness for the same purpose, with the same result. They subsequently offered to prove by the ' same witnesses the amount of money which had been advanced to Miss Ackerman, under the contract, and the cost of her maintenance, which evidence was also excluded.
We are of the opinion that there was error in this ruling. It is true that the defendants, upon the basis of such information as they then possessed, had answered or testified in previous litigations that Miss Ackerman had turned over all that she had to Mrs. Peters, but it cann&t be said that that fact had been successfully pleaded by them, since there has been no adjudication thereon, so far as we are informed, and, non constat, but that, on the trial of the instant case, they had obtained other information, and their testimony should have been received; the testimony previously given being taken into account as affecting its value. As to the testimony offered to prove the value of the benefits received by plaintiff during her residence with the family, we imagine that it was excluded under a misapprehension as to the offer, since the defendants Mrs. Peters sets up in her answer that plaintiff had been maintained at on expense exceeding $6,624, and we find nothing, to estop her from proving her disbursements' by way of off-set to plaintiff’s claim for $11,500 and interest.
It is to be regretted that this litigation cannot now be terminated, but the exclusion of defendants’ evidence makes it impossible to render a final judgment with any assurance of doing substantial justice, and the ease must be remanded, save as to Mrs. Gardiner, who should be released.
It is therefore ordered, adjudged, and decreed that, as to Mrs. Clara M. Peters, Wife of W. D. Gardiner, the judgment appealed from be affirmed, and that as to Mrs. Catherine L. Peters and Miss Catherine L.. Peters, said judgment be annulled, avoided, and reversed, and the case remanded for the sole purpose of enabling said defendants, as also the plaintiff, to offer evidence as to the property owned by the plaintiff upon and after January 1, 1891, and as to the cost of her maintenance in the Peters family from, say, October 15, 1890 to May 19, 1903. It is further adjudged and decreed that the two defendants last named pay the costs of the appeal, and that the costs of the district court await the determination of the case.