On Rehearing.
BREAUX, C. J.
There was no published through rate from the point of shipment and the destination of the freight. There was a published local rate between different places on the way.
The question is whether the carrier had the right to collect rates fixed by the Commission from the one point to the intermediate point and then to Shreveport, although there was no through rate.
The agent at the initial station furnished a lower rate to plaintiffs than the schedule rate.
Plaintiffs charged that the sum of the local rates was excessive.
That was the amount which was collected *1056 from the defendant and paid under protest. Plaintiffs sued for the difference in the amount between the amount furnished to them by the agent and the schedule rate, consisting of the sum of the local rates.
We are constrained to arrive at the conclusion that, although there is no through rate, it is not left to the carrier to make rates. The purpose is to avoid difference in rates and discrimination.
It was a mistake on the part of the clerk or agent who furnished to plaintiffs the information which indueed them to have their property shipped as stated by them. There were local rates, and they must be taken as governing.
Under the law the railroad “had no option but to collect the charges which they did.” See Report and Order of the Commission, No. 1,048.
The following is a brief statement of facts agreed upon between counsel for plaintiffs and counsel for defendants:
“It is further admitted that the rate collected was the sum of the local fixed and published by the Interstate Commission from Stillwater to an intermediate point and from the intermediate point to Shreveport; and that there was no through rate at that time between Stillwater and Shreveport established by the Commission; and the amount sued for is the difference between the rate quoted by defendant’s agent and the sum of the local rates fixed by the Commission.”
It being admitted that there were published local rates approved by the Commission, it follows that the following is pertinent. One who has obtained from the carrier transportation of goods from one state to another, at a rate specified in the bill of lading less than the published schedule of rate, filed and approved by the Interstate Commerce Commission, and in force at the time, whether or not he knew that the rate obtained was less than the schedule rate, is not entitled to recover the goods or damages for detention upon the tender made of the amount of the charges named in the bill of lading. Texas & Pacific v. Mugg & Dryden, 202 U. S. 245, 26 Sup. Ct. 630, 50 L. Ed. 1011.
All the authorities are to the same effect.
The question here (urged by plaintiffs) is specially that, as there was no through rate, the defendant could carry out the agreement of its agent, which had been made without regard to the special rates combined.
All the decisions hold that there should be no discrimination- — no favoritism. The law is imperative. Despite the imperativeness of the law, if it be as plaintiffs contend, there would be very little check on the carrier if it chose to take advantage of the fact that there is no through rate.
Judge Cooley of the Commission is quoted by plaintiffs as having said:
“Beyond question, the carrier must judge for itself what are substantially different conditions and circumstances which preclude a special rate, rebate or drawback which is made unlawful., * * * The cai.rier judges on peril of consequences, but the' special rate, rebate, or drawback which it grants is not illegal when it turns out that the circumstances and conditions were not such as to forbid it.”
The foregoing, quoted by plaintiff in argument, is embodied in the case of Interstate Commission v. Alabama M. R., 168 U. S. 169, 18 Sup. Ct. 45, 42 L. Ed. 414.
We do not consider that the excerpt is directly pertinent.
The circumstances and conditions in the case here were such as to forbid the rate, as there were schedule rates by which the parties should have been governed.
The Interstate Commission holds as follows, to wit:
“That the practice on the part of carrier of accepting and transporting through shipments, as to which no joint rate applies, upon rates made up by combination of the rates of several carriers participating in the movement, and of collecting as delivery carrier the aggregate charge of the several carriers upon such shipments, and of accounting to the several carriers for their portions of such charges is universal. That custom has the same binding effect as a joint rate as between carriers themselves, and as between *1058 carriers and shippers. Therefore carriers may apply to through shipments rates to and from stations to and from which there is no applicable published rate by using lawful published bases, locals, or proportionals in connection with their lawfully published tariffs.”
The foregoing is an excerpt from page 10, Rules and Regulations of the Interstate Commerce Commission, approved March 1, 1908.
The foregoing gives recognition to published local schedule. On the next page, same rules and regulations, is published the following:
“If no specific rate from point of origin to destination of through shipments is provided and no specific manner of construing combination rates for it is prescribed, the lowest combination of rates applicable by the route over which the shipment moves is the lawful rate for that shipment.”
Here, again, recognition is givén to a combination of rates as making up a special schedule of rates.
In one of the published decisions of the Commission, that body announces one of its rulings as follows:
“No joint rate was in effect over this road at the time the shipment moved, and the rate collected was the regularly established local applicable to such shipments between the points named.”
And, again, the Commission announces:
“The statute is mandatory in requiring carriers to collect their published tariffs, and this commission had no authority to vary that tariff.”
See, also, Poor Grain Co. v. Railway Co. (decided by Commissioner Harlan, July 8, 1907) 12 Interst. Com. R. 418.
True, as contended by plaintiffs, defendants had no through rates, but there were published rates on each of the connecting lines. They were, by law, made the basis upon which to charge.
The experiment of violating the Interstate Commerce Act is expensive. Laws must be carefully followed by carriers and shippers, who can find scant support in the error of a clerk or local agent in fixing rates at an amount less than the published schedule.
Plaintiffs’ other contention is that the schedule rate charged was excessive.
The schedule of rate is prima facie evidence of their reasonableness. Burlington R. R. v. Day, 82 Iowa, 312, 48 N. W. 98, 12 L. R. A. 436, 31 Am. St. Rep. 477.
Besides, there is no evidence before us of excessive rates.
It is therefore ordered, adjudged, and decreed that our former decree be reinstated as the judgment of this court; and it is ordered, adjudged, and decreed that the judgments of the district court and of the Court of Appeal are avoided, annulled, and reversed, as heretofore decreed.