PROVOSTY, J.
The plaintiff railroad company sues to recover of the defendant $97.57, being amount of undercharge on a carload of corn consigned to defendant at Coushatta, La., from Chase, Ind. T.
The facts are as follows: The defendant, a merchant at Coushatta, desiring to purchase the corn at Chase, Ind. T., for a customer, applied to the agent of the plaintiff railroad at Coushatta to ascertain what the tariff rates were between Chase and Coushatta, and was informed by the said agent that' it was 23 cents per 100 pounds. This was the through rate; but the initial carrier at Chase, the St. Louis & San Francisco Railroad, not receiving any special routing in *618 structions, routed the shipment to Shreveport, and from that point it was transmitted to • Coushatta. The rate from Chase to Shreveport is 22 cents, and from Shreveport to Coushatta, 32 cents, making a total rate for the route over which the car was carried of 54 cents. These were the rates as fixed by the Interstate Commerce Commission, and as duly printed and posted in the stations- of the said two railroads. When the car reached Coushatta, it had an undercharge notation of $47.50. The defendant paid this, but under protest. The defendant delivered the corn to his customer, and received payment therefor, including the $47.-50. Two years later the claim was made for the first time by the plaintiff railroad that an additional amount was due; and, defendant refusing to pay same, the present suit was brought to enforce payment. The customer of defendant has, in the meantime, become insolvent; and, if defendant is forced to pay the amount, he loses it.
In his answer the defendant recites the foregoing facts, and denies that he ever owed anything beyond the through rate of 23 cents per 100 pounds. 1-Ie pleads estoppel and the prescription of one year, and claims, in re-convention, the $47.50 of undercharge paid by him to the plaintiff railroad.
The trial court rejected plaintiff’s demand, on two grounds: First, that, there being a through rate between the two points, the plaintiff could not claim more than this through rate; second, estoppel.
In the case of Foster-Glassel Company v. K. C. S. Ry. Co., 121 La. 1053, 46 South. 1014, there was no through rate; but that circumstance does not affect the principle governing cases of this kind, which is that by the acts of Congress, the paramount law of the land, a railroad is prohibited from charging any less freight on interstate traffic than is prescribed by the Interstate Commerce Commission for the route over which the shipment has actually been carried. In view of that law, any consent that a local agent may give, or any contract that the entire body of officials of the railroad company, from president down, might enter into, would be no bar to the demand for the freight due according to the rates prescribed by the Interstate Commerce Commission. Any such consent, or agreement, would be in violation of said prohibitory law, and, in consequence, null and void.
In the case of Texas & Pacific R. R. Co. v. Mugg & Dryden, 202 U. S. 242, 26 Sup. Ct. 628, 50 L. Ed. 1011, the Supreme Court of the United States said:
“A common carrier may exact the legal rate for an interstate shipment, as shown by its printed and published schedule on file with the Interstate Commerce Commission and posted in the stations of such carrier, as required by the interstate commerce act, although a lower rate was quoted by the carrier to the shipper, who shipped under the lower rate so quoted.”
And in Gulf, Colorado & Santa Fe v. Hefley, 158 U. S. 98, 15 Sup. Ct. 802, 39 L. Ed. 910, the court said:
“Shippers are presumed to know of the existence of schedules and the necessity of compliance therewith, and will be held to have contracted with reference to the rates fixed by the schedule, regardless of the terms of the contract. The schedule rate is payable, although the contract fixes a lower rate.”
. In line with the above, the Interstate Commerce Commission, in passing on the point, on December 18, 1907, announced the following rule:
“A mistake by a carrier in responding to an inquiry by a shipper, either as to the rate or as to the route, will relieve neither the one nor the other from the obligation of fulfilling the law’s requirements. In either event the carrier must collect and the shipper must pay the rate as published for the route over which the shipment actually moved. This general rule is founded, not only on the strict letter of the law, but also on sound policy.” Poor v. Chicago, B. & Q. Ry. Co., 12 Interst. Com. Com’n R. 469.
The fact that the plaintiff company’s line lies wholly within the state does not in any *620 manner affect the situation. Augusta S. R. Co. v. Wrightsville & T. R. Co. (C. C.) 74 Fed. 522; Cincinnati, N. O. & T. P. R. Co. v. Interstate Commerce Com., 162 U. S. 184, 16 Sup. Ct. 700, 40 L. Ed. 935; Louisville & N. R. Co. v. Behlmer, 175 U. S. 658, 20 Sup. Ct. 209, 44 L. Ed. 309.
The estoppel caunot avail; for the same prohibitory law which precludes a railroad from agreeing, or consenting, not to claim the freight rate prescribed by the Interstate Commerce Commission, precludes it from estopping itself from so doing. To allow the railroad thus to preclude itself by estoppel would be to allow it to do indirectly what it is forbidden to do directly. Ackerman v. Lamer, 116 La. 101, 40 South. 581.
Defendant’s remedy in the matter is against the initial line, which misrouted the shipment so as to make the greater rate. On this point, see the decision of the Interstate Commerce Commission in Hennepin Paper Co. v. N. P. Ry. Co., 12 Interst. Com. Com’n R. 535, the syllabus of which reads as follows:
“It is the duty of a carrier, in the absence of routing instructions to the contrary, to forward shipments, having due regard to the interests of the shipper, ordinarily by that reasonable and jiracticable route over which the lowest charge for the transportation applies; and damage resulting to a shipper from a disregard of this obligation by the carrier can only be repaired to the extent of the difference between the higher rate applied over the line by which the traffic improperly moved and the lower rate which would have been applied had the freight been properly forwarded.
“To require reparation in such a case is only to require the carrier to make just compensation for injury resulting from failure to perform its duty; but to require or permit any other carrier than the one responsible for the misrouting to participate in the malting of such reparation would be to permit or require departure from established rates, which is expressly forbidden by law.”
The judgment of the district court herein is therefore set aside, and the case is remanded, to be proceeded with according to law.