### HOUSTON & T. C. RY. CO. v. AHLERS.
### (No. 243.)

(Court of Civil Appeals of Texas. Waco.
May 28, 1925. Rehearing Denied
June 25, 1925.)

1. **Carriers ⟜188—Carrier entitled to collect undercharge, regardless of error.**

In view of Interstate Commerce Act Feb. 4, 1887, § 6, as amended (U. S. Comp. St. § 8569, subd. 7), carrier was bound to collect amount of freight due under its published and approved schedule, and could recover amount of undercharge, whether error in computation thereof was in rate or weight specified in bill of lading.

2. **Carriers ⟜188—Published tariff rate not varied by estoppel.**

Under Interstate Commerce Act Feb. 4, 1887, § 6, as amended (U. S. Comp. St. § 8569, subd. 7), rate for interstate shipment of freight, when published, becomes established by law, and can be varied only by law and not by act of the parties, and hence collection of such rate cannot be barred by estoppel.

Appeal from Limestone County Court; H. F. Kirby, Judge.

Action by the Houston & Texas Central Railway Company against H. W. Ahlers. Judgment for defendant in the Justice Court was affirmed by the county court, and plaintiff appeals. Reversed and rendered.

Baker, Botts, Parker & Garwood, of Houston, and C. S. & J. E. Bradley, of Groesbeck, for appellant.

Ira Lawley, of Groesbeck, for appellee.

### Statement.

STANFORD, J. Appellant sued appellee in the justice court for an undercharge of $140.79 on an interstate shipment of freight. The case was tried in both the justice court and the county court, and is properly before this court as an agreed case, in substance, as follows:

January 28, 1924, the Rock Island Plow Company shipped from Rock Island, Ill., to appellee, at Groesbeck, Tex., a car of agricultural implements of the net weight at point of shipment of 13,600 pounds, under a uniform bill of lading, at the rate of $1.23½ per hundredweight, car to stop in St. Louis to load certain wagons, notify Leudinghaus Wagon Company. After said wagons were loaded, the net weight of the freight was 35,400 pounds. The correct rate for this shipment, as fixed by said railroad companies, and as shown by the printed and published schedule of rates filed with and approved by the Interstate Commerce Commission, and in force at the time, and then posted in the stations of said carriers, was $1.23½ per hundredweight. The appellant, on the arrival of the shipment, figured the freight due at said rate on the weight at the point of shipment, failing to take into consideration the additional weight caused by loading the wagons at St. Louis, and, such initial weight being less than 24,000 pounds, the minimum per car allowed, it figured the rate upon said car at 24,000 pounds at the rate stated, making the result $296.40, which appellee paid and appellant accepted and receipted appellee therefor, and delivered to appellee, and appellee accepted said car of freight. The car in fact when delivered weighed net 35,400 pounds, and the correct amount of freight at said approved and published rate was $437.19. Hence there was an undercharge of $140.79, which the railroad company was entitled to collect before delivering the car of freight to appellee, and which appellant failed to collect from or make demand therefor upon appellee, and failed to notify appellee of said undercharge at that time, but delivered the car to appel-

---

⟜For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

lee after he had paid therefor the sum of $296.40; the same being all the freight demanded by appellant at the time of delivery. The error in figuring the amount of freight was solely that of the railway company's, and was unknown by, and was in no way contributed to by, appellee, and the published and approved rates of said railroads and the classifications given said car were unknown by appellee. After receiving the freight, appellee priced and sold all of said goods upon a basis of their cost, plus the freight which he had actually paid, in good faith, believing he had paid the correct amount and all that he was liable for or could be called upon to pay, and he based his selling price and profits thereon, and was not advised and did not know of any mistake in figuring the amount of freight until about 90 days after the car was delivered to him, and until after all of such goods were sold by him. That by the acts and conduct, as above set out, of the agents of the railroad company, appellee was led to believe and did believe that he had paid all freight charges that could be lawfully charged for or against said car of freight, and that, if said railroad company is permitted to recover against him for the undercharge of $140.79, then appellee will be damaged thereby $140.79 and the expense of this suit, and that, if said railroad company is denied recovery herein, it will be damaged in the loss of service and money expended the sum of $140.79.

While the above is not all the agreed statement, we think it is sufficient for the disposition of the question involved. Judgment was rendered in both the justice court and county court in favor of appellee Ahlers.

### Opinion.

Under its first and only assignment of error, appellant contends the trial court erred in rendering judgment for appellee and in refusing to render judgment for it for $140.-79, with interest and costs.

This was an interstate shipment, and the question involved is controlled by the provisions of the federal Interstate Commerce Act of February 4, 1887, and the various amendments thereto, as construed by the Supreme Court of the United States. United States Compiled Statutes, § 8569, subd. 7, provides:

"No carrier, unless otherwise provided by this act, shall engage or participate in the transportation of passengers or property, as defined in this act, unless the rates, fares, and charges upon which the same are transported by said carrier have been filed and published in accordance with the provisions of this act; nor shall any carrier charge or demand or collect or receive a greater or less or different compensation for such transportation of passengers or property, or for any service in connection therewith, between the points named in such tariffs than the rates, fares, and charges which are specified in the tariff filed and in effect at the time; nor shall any carrier refund or remit in any manner or by any device any portion of the rates, fares, and charges so specified, nor extend to any shipper or person any privileges or facilities in the transportation of passengers or property, except such as are specified in such tariffs."

As said by the Supreme Court of the United States:

"The purpose of the act to regulate interstate commerce (Act of February 4, 1887, c. 104, 24 Stat. 379 [U. S. Comp. St. § 8563 et seq.]), frequently declared in the decisions of this court, was to provide one rate for all shipments of like character, and to make the only legal charge for the transportation of goods in interstate commerce the rate duly filed with the Commission. In this way discrimination is avoided, and all receive like treatment, which it is the main purpose of the act to secure." Pittsburgh, C., C. & St. L. R. Co. v. Fink, 250 U. S. 577, 40 S. Ct. 27, 63 L. Ed. 1151.

[1] Under the decisions of the Supreme Court of the United States construing the above provisions of the Interstate Commerce Act, it was the duty of the agent of appellant at Groesbeck, at the time he delivered the freight in question to appellee, to collect $437.19, the amount due according to the published and approved schedule of rates, and he was not at liberty to depart from such tariff rates filed. The above statute made it unlawful for him to receive less compensation than the sum fixed by the tariff rates duly filed. It is immaterial whether the error was in the rate specified in the bill of lading, or the weight so specified, or some other error. The correct amount of the freight is to be deduced from the correct weight of the freight and the approved and published schedule of rates filed, and appellant was not at liberty to accept a less amount, and, if it did so, it not only violated the law in so doing, but it was its duty to collect the remainder. Gulf, C. & S. F. R. Co. v. Hefley, 158 U. S. 98, 15 S. Ct. 802, 39 L. Ed. 910; T. & P. Ry. Co. v. Mugg, 202 U. S. 240, 26 S. Ct. 628, 50 L. Ed. 1011; Southern Ry. Co. v. Harrison, 119 Ala. 539, 24 So. 552, 43 L. R. A. 385, 72 Am. St. Rep. 936; Pittsburgh C., C. & St. L. Ry. Co. v. Fink, 250 U. S. 577, 40 S. Ct. 27, 63 L. Ed. 1151; M., K. & T. Ry. Co. v. Ward, 244 U. S. 385, 37 S. Ct. 617, 61 L. Ed. 1213; Keogh v. C. & N. W. Ry. Co., 260 U. S. 156, 43 S. Ct. 47, 67 L. Ed. 183.

In this case the appellee was notified by appellant that the freight was $296.40. Appellee paid this amount, believing it to be correct, and priced and sold all of said goods upon a basis of their cost plus the freight which he had actually paid and a reasonable profit, and it appears to be an injustice to appellee to require him now to pay $140.79 more freight. If the principle of estoppel

would apply in this kind of a case at all, the same should be applied, for the evidence is abundantly sufficient, but it seems estoppel has no application to this kind of a case. In the Fink Case, cited above, the court said:

"Nor can the defendant in error successfully invoke the principle of estoppel against the right to collect the legal rate. Estoppel could not become the means of successfully avoiding the requirement of the act as to equal rates, in violation of the provisions of the statute."

See New York, N. H. & H. R. Co. v. York & Whitney Co., 215 Mass. 36, 102 N. E. 366; Melody v. G. N. Railway, 25 S. D. 606, 127 N. W. 543, 30 L. R. A. (N. S.) 568, Ann. Cas. 1912C, 727; Louisiana Ry. & Nav. Co. v. Holly, 127 La. 615, 53 So. 882; Baltimore & O. S. W. R. Co. v. New Albany Box & Basket Co., 48 Ind. App. 647, 94 N. E. 906, 96 N. E. 28; Chicago, R. I. & Pac. Ry. Co. v. Hubbell, 54 Kan. 232, 38 P. 266; St. L., San Francisco Ry., Co. v. Ostrander, 66 Ark. 567, 52 S. W. 435.

[2] The rate, when published, becomes established by law. It can be varied only by law and not by the act of the parties. It does not permit inequality of rates to arise indirectly through the application of estoppel, which it was the aim of the act to suppress.

We sustain appellant's assignment, and reverse this case, and here render judgment against appellee for $140.79, with 6 per cent. interest from January 12, 1925.