### HOUSEMAN v. FARGO.

(Supreme Court, Special Term, Orleans County. May, 1910.)

1. CARRIERS (§ 30*)—FREIGHT RATES—FILING WITH INTERSTATE COMMERCE COMMISSION—EFFECT.

A carrier, filing its rates with the Interstate Commerce Commission as required by the interstate commerce act (Act Cong. Feb. 4, 1887, c. 104, 24 Stat. 379 [U. S. Comp. St. 1901, p. 3154]), and the various amendatory acts, is barred from making any agreement for a greater or less rate than that prescribed by the rates filed, though it failed to post and publish the rates as prescribed by the act, but only posted a card to the effect that the rates were in charge of an. agent in an office, and kept there for the convenience of the public.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 81; Dec. Dig. § 30.*]

2. CARRIERS (§ 30*).—FREIGHT RATES—OVERCHARGES.

A carrier fixed rates for peaches in baskets covered with gauze at $1.20 per 100 pounds, and for peaches in baskets with wood covers at 90 cents. A shipper placed his peaches in gauze-covered baskets, and placed a layer of baskets on the floor of a car. He then nailed crosspieces to the upright posts, and then laid a new floor on the crosspieces, just above the first tier of baskets, and then placed another tier of baskets on the new floor, and so on to the top of the car. Held, that he shipped his peaches in baskets covered with gauze, and the carrier was entitled to the higher rate, notwithstanding an agreement with the agent for the lesser rate, on the theory that the peaches were shipped in baskets with wood covers.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. § 81; Dec. Dig. § 30.*]

Action by George A. Houseman against James C. Fargo, as president of the American Express Company. There was a judgment for plaintiff, and the cause was removed to the Supreme Court. Reversed.

Filkins, Coe & Harcourt, for appellant.
Ryan & Skinner, for respondent.

MARCUS, J. This action was brought on for trial before a justice and a jury on the 1st day of September, 1909, in the county of Orleans; the trial resulting in a verdict for the plaintiff. The same is

---

removed to this court by virtue of section 342 of the Code of Civil Procedure.

The action is brought for an alleged overcharge in express rates made by defendant on a shipment of two car loads of peaches shipped by plaintiff from Ashwood, Orleans county, N. Y., to the city of Boston; the alleged overcharge being based on an alleged agreement made with defendant's agent at Ashwood, the agreement being in substance that the defendant would transport the peaches for 90 cents per 100 pounds from said station to the city of Boston.

It appears that when the peaches arrived at the city of Boston, instead of collecting the 90-cent rate, a rate of $1.20 was charged and collected for each 100 pounds for the transportation of the peaches; the difference in amount being the sum of $68.80, for which sum judgment was rendered by the justice, together with costs of the action.

The defense alleged the agreement between the plaintiff and the agent of the defendant was contrary to, and in violation of, the interstate commerce act, entitled "An act to regulate commerce," passed by Congress and approved February 4, 1887 (Act Feb. 4, 1887, c. 104, 24 Stat. 379 [U. S. Comp. St. 1901, p. 3154]), and the various acts amendatory thereto and supplementary thereof.

The statute in its terms provides that carriers doing business in the United States with lines extending through different states shall file with the Interstate Commerce Commission, at Washington, D. C., the rates of transportation that the carrier charges for transportation over its lines, and that the rates shall be posted and published in at least two public and conspicuous places in each office of the carrier.

The act further provides that no shipper shall demand, and no carrier shall receive, a greater or less rate than that filed and posted, and that any violation of the act is punishable by penalty therein imposed.

It further appears that the rate from Ashwood to the city of Boston, for peaches in car load lots contained in baskets covered with gauze netting was $1.20 per 100 pounds; that the rate for peaches covered with board covers was 90 cents per 100 pounds.

It was proven in the action that the rates required to be posted and published in two conspicuous places in the office of the carrier were not posted, but instead thereof there was a card posted to the effect that the rates were in charge of the agent in the office, and kept there for the convenience of the public, and could be seen at any time by asking for them, or words to that effect.

The contention of the plaintiff is that defendant, having failed to post the rates as prescribed in the interstate commerce act, is bound by the agreement made between the plaintiff and the defendant's agent at Ashwood for the transportation of the peaches, whereas, if the defendant had posted the rates as prescribed by the interstate commerce act, it could then have charged the rate of $1.20 per 100 pounds.

The main point of controversy seems to be that the defendant, having failed to post the rates filed with the Interstate Commerce Commission and as prescribed by the interstate commerce act, is bound by its agreement with the plaintiff to transport the peaches at the rate agreed upon.

The contention of the defendant is that, notwithstanding its failure to post and publish the rates, since the rates were filed with the Interstate Commerce Commission as required by the act, the defendant, by law, is barred from making any agreement for a greater or less sum than that prescribed by the rates filed with the commission, and that, if it collected a less sum than the rate filed with the commission, it would be guilty of a violation of that act.

Paintiff contends that, so far as shippers were concerned, the rates did not become binding upon them until the schedules were posted as well as filed. It appears that there was a card posted to the effect that said rates were in charge of the agent in said office, and kept there for the convenience of the public, and could be seen at any time by asking for them, or words to that effect. Plaintiff did not ask the agent to allow him to examine the schedules.

It is conceded that the case of Wabash Railroad Co. v. Sloop, 200 Mo. 198, 98 S. W. 607, supports the plaintiff's contention and maintains his alleged cause of action. In that case the railroad company sued out a writ of error, which, however, was dismissed upon its own motion. 199 U. S. 612, 26 Sup. Ct. 745, 50 L. Ed. 333.

On the other hand, the defendant cites the case of Texas & P. R. R. Co. v. Cisco Oil Mill, 204 U. S. 449, 27 Sup. Ct. 358, 51 L. Ed. 562, as holding that the posting of the schedules is not a condition precedent to the establishment and putting in force of the tariff rates. That decision appears to be decisive of the question raised by the plaintiff, and against his contention.

The carrier is entitled to receive, and the shipper required to pay, the rates fixed in said schedules. No more can be lawfully demanded; no less can be lawfully accepted. If the agreed rate is less than the rate shown upon the schedule and established as required by the interstate commerce act, the agreement for the reduced rate is illegal and cannot be enforced. Baltimore & Ohio R. R. Co. v. La Due, 128 App. Div. 594, 112 N. Y. Supp. 964; N. Y. C. & H. R. R. R. Co. v. Smith, 62 Misc. Rep. 532, 115 N. Y. Supp. 838.

It appears that the established rate from the place of shipment to Boston for peaches in car load lots, contained in baskets covered with gauze netting, was $1.20 per hundred pounds; that the rate for peaches shipped in baskets with wood covers, crates, or boxes, was 90 cents per 100 pounds. Plaintiff did not ship his peaches in boxes or crates, but in gauze-covered baskets. In order to protect the peaches shipped in this manner from injury, and to be able at the same time to ship car load lots of not less than 10,000 pounds in each car as required by the schedules, it became necessary for the plaintiff to purchase lumber and to make construction in this manner: A layer of peach baskets was placed on the floor of the car; crosspieces were nailed to the upright posts, and then a new floor was nailed to these crosspieces just above the first tier of baskets; then another tier of baskets was placed on this new floor; then new crosspieces were nailed to the upright posts, and a new floor laid over the second course of baskets, and so on to the top of the car; then each end of the car, when so filled in, was boarded up and nailed in, so as to form a sort of box at each end of the car. In this way each car was filled with more than 10,000 pounds, the amount

required to get the special rate. It seems that the local freight agent considered that this manner of packing peaches was equivalent to putting them in boxes or crates, and that the plaintiff was entitled to the special rate of 90 cents per 100 pounds, and therefore the agent agreed that the company would transport the goods at that rate.

It does not seem to me that the company can be held bound by an erroneous understanding or misconception of the true meaning of the language used in the schedules. When the rate established pursuant to the act of Congress is fixed at $1.20 per 100 pounds for gauze-covered baskets, it cannot be competent for the agent to treat them as boxes or crates provided the shipper adopts a certain method of storing and packing them in cars to secure the peaches from injury. The fact still remains that gauze-covered baskets are not boxes or crates, even though the agent considered and treated them as such. It is hard to conceive how the company can be bound by the agent's misconstruction or misconception of the language of the schedules. The terms in which the schedules are expressed constitute a limitation upon the agent's authority, and the shipper is chargeable with notice of them.

Taking the schedules by themselves, and disregarding extraneous circumstances, it is evident that there is no need of interpretation, as they are sufficiently explicit.

The plaintiff's alleged cause of action is really based upon the special circumstances of the case: That the agent agreed that, if the plaintiff would pack and store the baskets in the manner stated, he would accept the baskets as equivalent to boxes or crates, and that as the plaintiff did so, in reliance upon the agreement, the court should, in this instance, give such a construction to the schedules as would operate to convert plaintiff's baskets into boxes or crates; in other words, to adopt the practical construction of the parties. This, of course, cannot be done, in view of the act itself and the schedules filed in pursuance of the same, which are bound to control.

Judgment reversed.