## MELODY v. GREAT NORTHERN RY. CO.

Under the interstate commerce act (Act Feb. 4, 1887, c. 104, 24 Stat. 379 [U. S. Comp. St. 1901, p. 3154]), a person dealing with a carrier is as effectually bound by the law and the orders of the Commerce Commission, as to both freight and passenger tariffs, as is the carrier itself, and neither is estopped to assert the illegality of a contract made in violation of the act and orders of the Commission.

A ticket issued to a passenger by a carrier in violation of the terms and conditions of orders of the Interstate Commerce Commission confers no right to passage, and is not required to be accepted by the conductor of a train, and such passenger may be ejected without liability by the carrier to damages.

(Opinion filed, June 15, 1910.)

Appeal from Circuit Court, Minnehaha County, HON. JOSEPH W. JONES, Judge.

Action by Arlington B. Melody against the Great Northern Railway Company. From an order sustaining a demurrer to the answer, defendant appeals. Reversed.

*C. H. Winsor*, for appellant.

Freight and passenger rates are fixed by the tariff schedules filed with the interstate commerce commission and published as required by law, and they can not be varied. The schedule tariff rates absolutely govern. Gulf, Co. & Santa Fe, plaintiff in error, v. Heffly & Lewis, 158 U. S. P. 98; Tex. & Pac. Ry. Co. v. Mugg, 202 U. S. 241; Southern Railway Co. v. Harrison, 119th Ala. 539. Questions of interstate commerce, both passenger and freight, are governed entirely by the statutes of the United States and the construction of them by the Supreme Court of the United States Southern Ry. v. Harrison, supra.

*Ranson L. Gibbs*, for respondent.

A passenger ticket providing for transportation between points in different states sold at a less rate than the established rate between such points, does not render the ticket void as being in violation of the interestate commerce act so as to defeat an action against the carrier for refusing to honor the ticket and ejecting the passenger from the train; and this although the passenger and the ticket agent of the carrier had knowledge of the facts. Mexican Cent. Ry. Co. v. Goodman, 43 S. W. 580. As between passenger and conductor, the ticket must be conclusive evidence of the passenger's right to travel; but if the ticket is apparently good, the passenger has a right to refuse to leave the car. Hufford v. Grand Rapids & I. Ry. Co., 18 N. W. 580. A railroad company is responsible in damages, for all the consequences of a wrongful removal of a passenger from its train. Guy v. N. Y. O. & W.. Ry.

Co., 30 Hun 399; Rawn v. Christopher & Tenth St. Ry. Co., 34 Hun. 471; Keenen v. Great Northern Ry. Co., 72 N. W. 828; Krueger v. Chicago, St. P. M. & O. Ry. Co., 71 N. W. 684; Chamberlain v. L. S. & M. S. R. R. Co., 81 N. W. 399.

SMITH, J. This is an appeal from an order of the circuit court of Minnehaha county, sustaining a demurrer to the defendant's answer. The complaint sets forth a cause of action for the recovery of damages for an assault claimed to have been committed upon the plaintiff by the conductor and trainmen of the defendant railway corporation on the 7th of March, 1908. It is alleged that on the 6th day of March, 1908, the plaintiff purchased a railway ticket at the town of Lester, in the state of Iowa, for transportation to Sioux Falls, S. D., by way of Garretson, and paid therefor the sum of 75 cents; that on said day the plaintiff traveled on defendant's train on said ticket from Lester, Iowa, to Garretson, S. D.; that on the 7th day of March, 1908, the defendant received the plaintiff as a passenger upon its train at Garretson, S. D., to be carried to Sioux Falls, S. D., and that he presented the ticket above mentioned to the defendant's conductor in charge of said train, who refused to accept the same, and demanded fare from this plaintiff from Garretson to Sioux Falls; that the said plaintiff refused to pay said fare, whereupon the conductor and the employes of the defendant willfully, maliciously, and violently ejected the plaintiff from the train, whereby the said plaintiff was greatly injured, wounded, and suffered exposure and grievous mental suffering, alleging damages.

The defendant in its answer admits the foregoing allegations of the complaint, except as to injury, and sets forth the terms and conditions of the ticket in part as follows: "Great Northern Railway Line. Good for one first-class passage from Lester to Sioux Falls. This ticket is not transferable and will not be honored for passage if presented by another than the original purchaser, whose signature appears hereon. Any alteration or erasure on this ticket makes it void, and it will be taken up by conductor or exchanger. It will not be honored for passage after date punched in margin. If closely limited no stopover will be

allowed, if limited to thirty days from date of issue, stopovers will be allowed under usual rules, upon application to conductor." The defendant alleges that this ticket was not limited to 30 days from date of issue; that the conductor in charge of the train refused to accept the ticket, and demanded fare from Garretson to Sioux Falls, S. D., which demand plaintiff refused, whereupon the conductor ejected him from the train at the station of Corson, using no more force than was reasonably necessary; That the defendant in receiving said ticket for transportation between Lester and Garretson on the 6th day of March, 1908, accepted it as and for part of a continuous passage from Lester to Sioux Falls, and not otherwise; that it was necessary for the plaintiff to change cars at Garretson; that the plaintiff arrived at Garretson on the 6th day of March, and that the defendant's regular train left Garretson for Sioux Falls on said day, after the arrival of the train on which plaintiff traveled from Lester to Garretson, and plaintiff could have continued his passage from Garretson to Sioux Falls on the same day; that the distance from Lester to Garretson over the defendant's railway line is 23.5 miles, and from Garretson to Sioux Falls is 18.2 miles; that the ticket for continuous passage between Lester and Sioux Falls was sold under and in accordance with Local Passenger Tariff No. 192, which tariff was duly posted and published in the stations and depots of defendant and duly filed with the Interstate Commerce Commission and went into effect on August 1, 1907, by authority of the Interstate Commerce Commission Order No. 2184; that by said tariff schedule the fare from Lester to Sioux Falls for continuous passage and not otherwise, over the defendant's railway, is 75 cents; that said tariff schedule provides as follows.: "Tickets will be limited to continuous passage. Journeys to commence on the day of sale. Stopovers will not be allowed. Exception: One-way tickets between points 300 miles or over apart may be limited to 30 days from date of sale and, when so limited, stopovers will be allowed at all points within limits;" that said passenger tariff fixes the local fare between Lester and Garretson at 60 cents, and

the local fare between Garretson and Sioux Falls at 55 cents. Defendant further alleges that the plaintiff was not a passenger in continuous passage from Lester to Sioux Falls, he having stopped over at Garretson, but was a passenger from Garretson to Sioux Falls as a complete trip, and that the plaintiff refused to comply with the passenger tariff schedule as above set forth, by refusing to pay his fare according thereto, from Garretson to Sioux Falls. The original ticket is made a part of these pleadings, and discloses the fact that the ticket agent of defendant at Lester neglected to punch the ticket as required by the recitals on its face, so as to indicate the limitation to a continuous trip required by the order of the Interstate Commerce Commission permitting the lower charge for the transportation. On the face of the ticket appears the following: "I agree to the above conditions ———, Purchaser;" but this agreement was not signed by the purchaser. The plaintiff demurred to the answer on the ground that the facts stated do not constitute a defense, which demurer was sustained by the trial court, and the appellant assigns this ruling as error.

The record discloses that the agent of defendant at Lester, Iowa, either intentionally or inadvertently sold the plaintiff an unlimited ticket or contract for transportation from Lester, Iowa, to Sioux Falls, S. D., for the sum of 75 cents. This transaction, whether entered into by the agent and purchaser intentionally or inadvertently, was a violation of the order of the Interstate Commerce Commission. It is admitted by the record that the order of the Commission, contained the requirement that tickets sold at this special rate must be for continuous passage, and that stop-overs could not be allowed, and that the order had been regularly filed, and posted in the station of defendant at Lester, Iowa. There can be no doubt, we think, under the construction given the interestate commerce act (Act Feb. 4, 1887, c. 104, 24 Stat. 379 [U. S. Comp. St. 1901, p. 3154]) by the federal courts, that every person dealing with an interstate carrier is as effectually bound by the law and the orders of the Commission, as to both freight and passenger tariffs, as is the carrier himself. To hold that either party under any conditions may be estopped from asserting the

illegality and invalidity of a contract made in violation of the interstate law and the orders of the commission, would afford an easy means for its evasion, and might result in its practical annulment.

Plaintiff can recover damages only for a refusal of defendant's conductor to comply with a valid contract to transport him from Lester, Iowa, to Sioux Falls, S. D. Section 545 of the Civil Code provides: "If any passenger shall refuse to pay his fare it shall be lawful for the conductor of the train and the servants of the corporation to put him and his baggage out of the cars in the manner prescribed in section 1593." In the absence of any special regulations legal payment of fare may be made either to the conductor personally, or to the agent of the company. Upon payment of the fare to either, a contract arises creating a duty toward the passenger, and his ejection thereafter becomes a wrongful trespass, and entitles him to compensation for the injury. Upon payment of the necessary fare to the agent of the company, the passenger received a ticket which, to the conductor, is the only evidence of the contract; which contract is required to be made in strict conformity with the order of the commission, under heavy penalties. To say that a conductor is bound to accept a ticket issued in violation of the order of the commission would seem to be an anomaly, and to permit the passenger who was a party to the same violation of law, to insist upon a right to ride upon a void and unlawful ticket, or to recover damages for a wrongful ejection, would be a still greater one.

The ticket was for interstate passage between points less than 300 miles apart, was wholly unlimited, and therefore in plain violation of the filed and posted schedules and the order of the commission. Suppose, instead of a ticket, the defendant in violation of the statute had furnished plaintiff a pass, and the conductor knowing it to be unlawful, had refused to honor it, and on plaintiff's insisting on his right to ride and refusal to pay fare, had ejected him from the train would it be possible for him to recover damages for such an ejection? We think not. The issuance of an unlawful pass is no different in principle from the issuance of an

unlawful ticket. Nor do we see any reason why the terms and conditions and rates upon which a passenger may contract for his own transportation under the order of the commission duly filed and posted, are not binding upon him as upon the shipper of freight. The same law requires the posting and filing of both the passenger and freight schedules, and in the same manner. Such schedules are intended for the inspection, information, and advantage of the public. Gulf, etc., R. Co. v. Hefley, 158 U. S. 101, 15 Sup. Ct. 802, 39 L. Ed. 910. And the commission have authority to determine and prescribe the form in which schedules required to be kept open for public inspection shall be prepared and arranged. Interstate Commerce Commission v. Cinn., etc., R. Co., 167 U. S. 479, 17 Sup. Ct. 896, 42 L. Ed. 243. It is held by the federal courts that a shipper is presumed to know the schedule rates and the necessity of compliance therewith, regardless of the terms of the contract, and the same presumption must, we think, necessarily apply to passenger tariff rates. Gulf, etc., R. Co. v. Hefley, 158 U. S. 98, 15 Sup. Ct. 802, 39 L. Ed. 910; Southern R. Co. v. Harrison, 119 Ala. 539, 24 South. 552, 43 L. R. A. 385, 72 Am. St. Rep. 936; Mobile, etc., R. Co. v. Dismukes, 94 Ala. 131, 10 South. 289, 17 L. R. A. 113; Gerber v. Wabash R. Co., 63 Mo. App. 145; Church v. Minneapolis, etc., R. Co., 14 S. D. 443, 85 N. W. 1001. The unlawful act of the carrier in fixing a lower rate by contract will not prevent recovery of the higher schedule rate. Mo., etc., R. Co. v. Trinity County Lumber Co., 1 Tex. Civ. App. 553, 21 S. W. 290. It is also held that a contract for less than schedule rates induced by mistake is unlawful and cannot be enforced. Houston, etc., R. Co. v. Dumas (Tex. Civ. App.) 43 S. W. 609.

It must be borne in mind that plaintiff is here insisting that as to him this contract is binding and effective, notwithstanding it is by its terms unlimited as to both time and stop-over privileges, and is in clear violation of the order of the commission. He plants his action squarely upon the very language and terms of the contract. He insists that the carrier, whether intentionally or inadvertently, has furnished him a contract which, though in terms in

violation of the order of the commission, entitled him to be transported according to the very terms of the contract itself. Such a contention could be only maintained upon the theory that the carrier may be estopped by the act of its agent from repudiating the unlawful contract to plaintiff's detriment. But the act of the agent upon which plaintiff must found his right was in itself illegal and void, and no doctrine of the law is more firmly established than that an estoppel cannot be founded upon an illegal act. Uhlig v. Garrison, 2 Dak. 71, 2 N. W. 253.

In Mayes v. Life Stock Ass'n, 58 Kan. 712, 51 Pac. 215, the court citing with approval Uhlig v. Garrison, supra, says: "The controversy arises here directly between the parties to the illegal contract, and the plaintiff seeks a recovery through and under that contract. The parties voluntarily entered into the contract, and they must be held to have had knowledge that in doing so they were violating the law."

"The estoppel claimed by complainant in this case, if the facts were proved as claimed, could not have the effect sought to be attributed in this case. Public policy will not allow the doctrine of estoppel to come in, and aid in validating an unexecuted contract which it holds to be void." Robinson v. Patterson, 71 Mich. 141, 39 N. W. 21.

"But it is insisted such a contract may be relied on as an estoppel, and a recovery therefor had. We do not believe this is correct, and are unwilling to hold that a contract void as being against public policy has any vitality whatever. It matters not how it may be pleaded, a substantial right cannot be enforced thereunder. That which cannot be recovered in an action on the contract should not be permitted to be done by indirection." Langan & Noble v. Sankey, 55 Iowa, 52, 7 N. W. 393.

"Courts will not aid a person whose cause of action, either upon his own showing or otherwise, appears to arise exturpi causa, or from the transgression of positive law. They do not adopt this policy for the purpose of protecting a defendant, but from a determination not to assist such a plaintiff." Den. ex dem. Wooden v. Shotwell, 24 N. J. Law, 789.

"Consequently, the doctrine of estoppel cannot be applied to give validity to what would be an illegal act, or to prevent the company from setting up, in answer to a claim to such stock, that the same is void, as being issued in excess of the capital. By this I mean that no one can be estopped from refusing to do an illegal act; but that an estoppel can only operate in favor of a party injured, where there is no provision of law forbidding the party against whom the estoppel is to operate from doing the act which is sought to be carried out through its operation." New York & New Haven R. R. Co. v. Schuyler, 38 Barb. (N. Y.) 537.

We have considered only the theory upon which plaintiff apears to have founded his action. By stipulation the original ticket was made a part of the answer, and on its face discloses that it is wholly unlimited either as to time or stop-over privileges. Apparently the answer originally intended to treat the ticket as though it were one properly limited by punching, for continuous passage without stop-over privilege, in accordance with the order of the commission. The answer does not allege that the ticket was issued by mistake or inadvertence of defendant's agent. In this state of the pleadings the only question before us for determination is the single proposition whether the specific contract disclosed by the ticket itself, concededly in violation of the orders of the Interstate Commerce Commission duly filed and published, must be accepted by the conductor of a train as a valid and legal contract or ticket. There is no allegation in the complaint that the plaintiff was in any way deceived or mislead by the defendant's agent, or was not aware of the illegality of the contract or the orders of the commission, though we do not mean to infer that such facts might be material if pleaded. We refer to them only to make clear what appears to us to be plaintiff's only contention, viz., that he had an absolute right to be carried as a passenger upon a ticket issued to him by the carrier in violation of the terms and conditions contained in the orders of the commission. We do not believe such a contention can be sustained.

The order sustaining the demurrer to the answer is reversed.