The more reasonable construction of the statute is that the words, "all violations of the Liquor Tax Law committed by any person on the same day" refer to all violations by the same person and not to separate violations by *all* persons on the same day, and therefore that separate violations by different individuals not acting in common do not constitute one crime, but separate and distinct crimes for which each must be prosecuted separately.

It follows that the judgment of conviction should be reversed, and a new trial ordered in the County Court.

(156 App. Div. 830.)

### PENNSYLVANIA R. CO. v. TITUS.

(Supreme Court, Appellate Division, First Department. May 29, 1913.)

1. CARRIERS (§ 189*)—INTERSTATE COMMERCE—FREIGHT RATES—LOWER RATE—MISTAKE—INADVERTENCE—ESTOPPEL.

It being unlawful for a carrier to contract to carry interstate freight at a lower rate than its duly scheduled tariff, it cannot estop itself to demand and collect the balance of the lawful rate, where it has delivered goods without charging the same in full either by a contract or through mistake or inadvertence.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 162, 854, 855, 859–865; Dec. Dig. § 189.*]

2. CARRIERS (§ 194*)—FREIGHT—LIABILITY OF CONSIGNEE.

While a consignor or shipper is liable for freight by express contract between him and the carrier for transportation of goods, there is no contractual relation between the carrier and the consignee by the mere designation of the latter as consignee, which obligates him to receive the goods or pay the freight; his liability for freight resting entirely on an implied contract arising on his acceptance of the goods from the carrier with notice of the carrier's lien which is terminated by delivery.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 870–872; Dec. Dig. § 194.*]

3. CARRIERS (§ 194*)—FREIGHT—LIABILITY OF CONSIGNEE—MISTAKE.

Where a carrier induces a consignee to accept goods on the theory that freight charges are "as stated," the consignee does not thereby become liable to the carrier for the difference between the freight charges paid and those which the carrier is required by law to charge.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 870–872; Dec. Dig. § 194.*]

4. CARRIERS (§ 72*)—TRANSPORTATION OF GOODS—OWNERSHIP.

While presumptively the consignee of goods is the owner, the presumption is not conclusive.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 243–250, 258–261, 266–269; Dec. Dig. § 72.*]

5. CARRIERS (§ 194*)—FREIGHT—LIABILITY OF CONSIGNEE.

The Interstate Commerce Act (Act Feb. 4, 1887, c. 104, 24 Stat. 379 [U. S. Comp. St. 1901, p. 3154]) does not prohibit a carrier from giving credit to a consignor for freight charges, and though the consignee may be chargeable with notice of the scheduled rates, yet when acting as agent for the consignor he is neither, so far as the carrier is concerned, obliged to compare the rate demanded by the carrier with the lawful rate, nor to inquire what arrangement, if any, the carrier had with the consignor for any additional charges required by law, and hence where peaches were shipped to defendant as the owner's agent for sale on com-

mission, and defendant paid plaintiff the freight charges demanded, which by mistake of defendant's agent were too low to conform to the scheduled rates, defendant having sold the peaches and accounted to the owner for the proceeds, less the freight paid, was not liable for the difference between the freight demanded and the lawful charges.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 870–872; Dec. Dig. § 194.*]

6. CARRIERS (§ 83*)—BILL OF LADING—NONNEGOTIABLE BILL.
Where a bill of lading was nonnegotiable, it was not required to be presented before delivery of the goods.

[Ed. Note.—For other cases, see Carriers, Cent. Dig. §§ 308–315; Dec. Dig. § 83.*]

McLaughlin, J., dissenting.

Appeal from Appellate Term, First Department.

Action by the Pennsylvania Railroad Company against James L. Titus, doing business under the name and style of Titus Brothers. From a determination of the Appellate Term (78 Misc. Rep. 347, 138 N. Y. Supp. 325) affirming a judgment in favor of plaintiff, defendant appeals. Reversed.

See, also, 154 App. Div. 941, 139 N. Y. Supp. 1136.

Argued before INGRAHAM, P. J., and McLAUGHLIN, LAUGHLIN, DOWLING, and HOTCHKISS, JJ.

Dana T. Ackerly, of New York City (George W. Morgan and Edward A. Craighill, Jr., both of New York City, on the brief), for appellant.

Ray Rood Allen, of New York City, for respondent.

LAUGHLIN, J. This case was submitted to the trial court on an agreed statement of facts, which relate to interstate commerce and present the question as to whether, where through inadvertence or mistake the carrier fails to charge the full amount of the freight required by the Interstate Commerce Act, so called, and its filed tariff schedules, the consignee of the goods for sale who accepts delivery and pays the *stated* charges, and thereafter sells the goods and accounts to his principal, the shipper in another state, therefore, deducting the freight charges paid and his commissions and other expenses, and transmitting to his principal the balance, is liable to the carrier for the balance of the freight charges which should have been imposed.

In the month of June, 1907, one Franklin, of Adairsville, Ga., who was the owner of two car loads of peaches, shipped from there by the Nashville, Chattanooga & St. Louis Railway, consigned to the defendant, routed over the plaintiff's line, as the final carrier, from Philadelphia, and the initial carrier issued therefor nonnegotiable bills of lading. The peaches were delivered to the defendant at the city of New York, and he paid to the plaintiff the sum of $488 for freight and refrigerating charges, according to its statement thereof. The plaintiff's agent made a mistake in computing the charges, which, according to the printed schedule of rates and transportation charges filed and posted by it and the connecting carriers in accordance with

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

the provisions of section 6 of the Act of Congress of February 4, 1887, c. 104, vol. 24, U. S. Statutes at Large, p. 379 (U. S. Comp. St. 1901, p. 3156), as amended by section 2 of the Act of Congress of June 29, 1906, c. 3591, vol. 34, pt. 1, U. S. Statutes at Large, p. 584 (U. S. Comp. St. Supp. 1911, p. 1289), should have been 81 cents per 100 pounds, instead of which plaintiff charged and received 80.2 cents per 100 pounds. This error was not discovered by the plaintiff until 15 months later, and it then demanded of defendant payment of $3.45, being the balance of the legal freight and refrigerating charges not paid. The defendant declined to pay the same on the ground that he had received the peaches as a commission agent for the consignor and had sold them and remitted to his principal the proceeds of the sale less his commissions and expenses. The plaintiff then wrote to the consignor, demanding payment, and, on receiving no reply to its letter, brought this action.

It is contended in behalf of the plaintiff that the provisions of the Interstate Commerce Act, designed to secure equality in shipping rates and the public policy of the Congress manifested thereby, imperatively require that the *consignee* shall be held liable where the carrier has, through mistake or inadvertence, thus delivered goods without requiring payment of the full lawful rate of freight.

[1] It is well settled that it is unlawful for a carrier to contract to carry interstate freight at a lower rate than its duly scheduled tariff rates, and that neither by contract nor through mistake or inadvertence can it estop itself from demanding and collecting the balance of the lawful rate, where it has delivered goods without charging the same in full. Ill. Central R. R. v. Henderson Elevator Co., 226 U. S. 441, 33 Sup. Ct. 176, 57 L. Ed. ——; Union Pac. R. Co. v. American Smelting & Refining Co. (C. C. A.) 202 Fed. 720; Baltimore & Ohio R. R. Co. v. La Duc, 128 App. Div. 594, 112 N. Y. Supp. 964.

[2] It does not follow, however, that the *consignee* is liable. It is not claimed, and I do not understand, that the Interstate Commerce Act has made any change in the law with respect to the liability of a consignee for freight charges. The consignor or shipper, of course, is liable for such charges, for the contract is made with him, and he induces the carrier to transport the freight (2 Hutchinson on Carriers [3d Ed.] § 810; Central R. R. Co. v. MacCartney, 68 N. J. Law, 165, 52 Atl. 575); but there is no contractual relation between the carrier and the consignee by the mere designation of the latter as consignee which obligates him to receive the goods, or to pay the freight (Merrick v. Gordon, 20 N. Y. 93).

[3] Of course, if the consignee accepts the goods, with notice that the carrier has a lien for a specified amount, thereby depriving the carrier of its lien, he becomes obligated by an implied contract to pay the charges (Union Pac. R. Co. v. Am. Sm. & Ref. Co., supra; Davison v. City Bank, 57 N. Y. 81; Sheets v. Wilgus, 56 Barb. 662); but, if the carrier induces him to accept the goods on the theory that the freight charges are *as stated,* there is no principle upon which he thereby becomes liable to the carrier for the difference between the freight charges thus paid and those which the carrier by law was re-

quired to charge (Central R. R. Co. v. MacCartney, supra, and Hutchinson on Carriers [3d Ed.] § 807).

[4] Presumptively the consignee of goods is the owner thereof, and very often he is so in fact; but that is not conclusive. Hutchinson on Carriers (3d Ed.) § 807.

It is conceded by the learned counsel for the respondent that the defendant would not be liable for the balance of the freight charges, if he had notified the plaintiff, or the plaintiff had known when it delivered the goods to him, that he was acting as a commission agent, and the authorities so held. Elwell v. Skiddy, 77 N. Y. 282. I fail to see any distinction in principle, depending on the question of knowledge on the part of the carrier with respect to whether the consignee was acting as agent. There was no deception by the consignee as agent of the consignor; he was ready to pay the amount of the charges for which the carrier claimed a lien and he did so. ·

[5] The Interstate Commerce Act does not prohibit a carrier from giving credit to a consignor in whole or in part for the carrying charges; and although the consignee may be chargeable with notice of the scheduled rate of charges, when acting as agent for the consignor, he was neither, so far as the carrier is concerned, obliged to compare the rate demanded by the carrier with the lawful rate, nor to inquire what arrangement, if any, the carrier had with the consignor for any additional charges required by law. The consignee was innocent of any intent to participate in an evasion of the law; and in fact there is no evidence that either the consignor or carrier intended to violate the law. It may be that the presumption that a consignee is the owner would enable the plaintiff to make out a prima facie case, but on its appearing, as it does by the agreed statement of facts, that such was not the case, then it seems to me the defendant is no more liable to the plaintiff than if the plaintiff knew that he was acting as agent before delivering the peaches to him. Of course, if there was any contract obligation on the part of the defendant, by which he became liable to the plaintiff for *all* freight charges required to be imposed by law, then the carrier could not estop itself, or be estopped, from maintaining an action against him, any more than it could on the original contract by which the owner and consignor became liable for the lawful carrying charges; but here there was no such contractual liability on the part of the defendant to the carrier.

We are not now required to decide whether, if this error had been discovered, and the claim had been made, while the defendant had the peaches, or the proceeds thereof, on hand, and before accounting to his principal, he would be liable, or the property or the proceeds thereof could be reached to the extent required to satisfy the plaintiff's claim. The only theory on which he could possibly be liable for the balance of the freight charges would be that he held the property or the proceeds thereof, and had received or was in a position to receive the benefit resulting from the delivery of the goods without payment of the lawful freight charges in full for which the carrier had a lien. Since before the claim was made the consignee had remitted the surplus proceeds of the sale to his principal, it is manifest that the car-

rier would be estopped from enforcing a claim against him on that theory, even if it otherwise might do so. Central R. R. Co. v. MacCartney, supra. The case of the Union Pacific R. Co. v. Am. Smelting & Refining Co., supra, one on which plaintiff relies, is readily distinguishable from the case at bar, for there the bill of lading provided for the payment of the freight by the *consignee only* and it does not appear but that the consignee was the owner.

[6] The bills of lading under which the peaches in question were shipped contained a provision to the effect that the "owner *or* consignee" should pay the freight, and it does not appear that the consignee ever received the bills of lading, which, being nonnegotiable, were not required to be presented before delivery of the peaches.

I am of opinion, therefore, that the determination of the Appellate Term and the judgment of the Municipal Court should be reversed, with costs, and that the defendant should have judgment on the submission for the dismissal of the complaint, with costs.

INGRAHAM, P. J., and DOWLING and HOTCHKISS, JJ., concur.

McLAUGHLIN, J. (dissenting). When the peaches were delivered by Franklin to the Nashville, Chattanooga & St. Louis Railway at Adairsville, Ga., they were consigned to the defendant at New York City. No arrangement was made by Franklin with the railroad company as to the payment of the transportation charges and nothing was said on that subject. When the peaches arrived in New York City, the defendant, the consignee, was, presumptively, the owner of them, and when he accepted them from the railroad company he became, prima facie, liable to pay the freight thereon. The railroad company had a lien on them to this extent, and, when it released its lien without payment of the full amount of freight, the law implied a promise on his part to pay what was due. As between him and Franklin, he had agreed to pay the freight.

At and before the shipment and delivery of the peaches the plaintiff had duly published and filed with the Interstate Commerce Commission, and had posted and kept open for public inspection, within the provisions of the acts of Congress relating to the subject, a printed schedule of rates and transportation charges. It was unlawful for the plaintiff to give, or the defendant to receive, any rebate or concession from this amount. This the defendant knew, for he was charged with knowledge of the statutes. Union Pacific R. R. Co. v. American Smelting & Refining Co. (C. C. A.) 202 Fed. 720; Illinois Central R. R. Co. v. Henderson Elevator Co., 226 U. S. 441, 33 Sup. Ct. 176, 57 L. Ed. ——; Pennsylvania R. R. Co. v. J. S. Crutchfield & Ano., cited by the Court of Common Pleas of Pennsylvania, April, 1913, not yet reported. He also knew what the freight was, because he was bound to know the rate. Kansas City R. R. Co. v. Carl, 227 U. S. 639, 33 Sup. Ct. 391, 57 L. Ed. ——; Gardiner v. N. Y. C. & H. R. R. Co., 201 N. Y. 387, 94 N. E. 876, 34 L. R. A. (N. S.) 826, Ann. Cas. 1912B, 281.

Central Railroad Co. v. McCartney, 68 N. J. Law, 165, 52 Atl. 575, is distinguishable from this case. There, the transportation was not under an act of Congress relating to interstate commerce, and besides the railroad company, when it accepted the ties for shipment, knew that the consignor was to pay the freight.

The determination of the Appellate Term should be affirmed, with costs.