## ST. LOUIS, I. M. & S. RY. CO. v. McNABB.

No. 7172—Opinion Filed Nov. 21, 1916.

Rehearing Denied Jan. 30, 1917.

(162 Pac. 811.)

(Syllabus by the Court.)

**1. Carriers—Rates—Interstate Commerce—Contract of Shipment—Validity.**

By reason of section 6 of the Interstate Commerce Act Feb. 4, 1887, c. 104, 24 Stat. 380, as amended by act approved June 29, 1906, c. 3591, sec. 2, 34 Stat. 586 (U. S. Comp. St. 1909), p. 1153), a contract with a railroad company to carry interstate freight at a rate less than or different from that prescribed by the published schedule rates filed with and approved by the Interstate Commerce Commission and in force at the time of shipment is void.

**2. Same—Invalid Rate—Lien.**

In such case, the carrier has a lien upon said freight for the amount of the legal charges, and the shipper is not entitled to recover the goods or damages for their detention upon the payment or tender of any sum less than the schedule rates.

**3. Evidence — Secondary Evidence — Interstate Shipment—Rate—Schedules.**

The published schedule rates filed with and approved by the Interstate Commerce Commission are the best evidence of the tariff in force fixing the legal rates upon a shipment between certain points, and evidence as to statements made by the carrier's agent is inadmissible to establish the correct rate.

Error from County Court, Sequoyah County: J. G. McCombs, Judge.

Action by R. C. McNabb against the St. Louis, Iron Mountain & Southern Railway Company. Judgment for plaintiff, and defendant brings error. Reversed and remanded.

Thomas B. Pryor and W. L. Curtis, for plaintiff in error.

HARDY, J. R. C. McNabb commenced this action against the St. Louis, Iron Mountain & Southern Railway Company to recover possession of certain property of the value of $200 and for damages for the wrongful detention thereof in the sum of $25.

The trial in the county court resulted in verdict for plaintiff, and defendant appeals.

The litigation grows out of this state of facts: Plaintiff moved from Denning, Ark., to Vian, Okla., and at the time of moving chartered a car and loaded it at Denning with household goods. He was told by the agent at Denning that the rate thereon from Denning to Vian would be 22½ cents per hundred pounds for a car with a minimum capacity of 20,000 pounds, which amounted to $45. When the car reached Vian, the agent at that place demanded 30 cents per hundred instead of 22½ cents, which amounted to $15 more than the amount charged at Denning. Plaintiff refused to pay this amount, and brought this action.

By section 6 of the Interstate Commerce Act as amended by Act of Congress June 29, 1906, 34 Stat. L. 586 (U. S. Comp. Stat. 1909, p. 1153), every common carrier is required to print and keep open to public inspection schedules showing all the rates, fares, and charges for transportation between different points on its own route and points on the route of other carriers when a joint rate has been established, which schedules are required to be printed and to plainly state the classification of freight in force and separately state all charges which the Interstate Commerce Commission may require, etc., and it prohibits said carrier from charging, demanding, collecting, or receiving a greater or less or different compensation for such transportation of property or any service in connection therewith, or from refunding or remitting in any manner or by any device any portion of the rates, fares and charges so specified; and said act also makes a willful failure upon the part of any carrier to comply therewith a misdemeanor punishable by a fine of not less than $1,000 nor more than $20,000 for each offense; and also declares that it shall be unlawful for any person, persons, or corporation to offer, grant, or give, or solicit, accept, or receive any rebate, concession, or discrimination in respect to the transportation of any property in interstate commerce by any common carrier, subject to the provisions of said act, and prescribes a like penalty for such offense.

Plaintiff in error contends that under this act it was its duty, when said shipment reached Vian, Okla., to demand and collect the lawful charge for the transportation of such property, as fixed by the tariffs prepared under this act, and that it was entitled to a lien upon said property and to retain the possession thereof until the payment of said amount. This contention is correct.

In A., T. & S. F. R. Co. v. Bell et al., 31 Okla. 238, 120 Pac. 987, 38 L. R. A. (N. S.)

351, the shipper entered into a contract with the agent of the Kansas City Southern Railway Company at Horatio, Ark., for a rate on sheep from Horatio to Ponca City, Okla., during the month of October, 1906, of $90 per car, double-decked cars, or two single-decked cars to be 12,000 pounds. Relying upon this agreement, the shipper on the 13th of October, 1906, purchased 14 cars of sheep and shipped them to Ponca City, and on the 21st of October purchased two more cars which were shipped to the same destination. Said shipments were made in single-decked cars and consigned by plaintiffs to themselves, charges to be collected at destination, and the shipments were routed over the Kansas City Southern Railway to Pittsburg, Kan., and there delivered to the Atchison, Topeka & Santa Fe Railway Company, by which company they were transported to Ponca City and delivered to the shipper. After delivery of the sheep, the agent of the Atchison, Topeka & Santa Fe Railway Company demanded of them a certain sum of money as freight charges on the cars shipped and $5 as feed charges on the last two cars, which the shipper refused to pay upon the ground that they had entered into a contract with the agent of the Kansas City Southern Railway to transport said sheep and deliver same at Ponca City for a certain sum, which amount the shipper tendered to the agent of the Atchison, Topeka & Santa Fe Railway Company, who refused to accept the same. Action thereupon was instituted to recover the amount claimed to be due under the published tariff, and this court held that by reason of section 6 of the Interstate Commerce Act as amended by act approved June 29, 1906, the contract with the agent at Horatio, Ark., was void, and that the delivering carrier, who had paid to the initial carrier its freight charges in accordance with its tariff on file regulating such rates, was entitled upon delivery of the shipments to the consignee to collect and receive the freight charges so paid and its freight charges in accordance with its tariff on file.

In St. L. & S. F. R. Co. v. Mounts, 44 Okla. 359, 144 Pac. 1036, this court said:

"A schedule of freight rates duly filed with the Interstate Commerce Commission, which has not been suspended nor disapproved, fixes and determines the legal rates that must be charged for interstate shipments."

In G., C. & S. F. R. Co. v. Hefley, 158 U. S. 98, 15 Sup. Ct. 802, 39 L. Ed. 910, plaintiff sued to recover damages for the refusal by the carrier to deliver goods consigned to him after tender of payment of the stipulated charges named in the bill of lading. The goods, a lot of furniture, had been delivered to the carrier at St. Louis, for transportation to Cameron, Tex., at a stipulated rate specified in the bill of lading of 69 cents per hundred pounds, the total charges amounting to $82; whereas, the published schedule rate at the time was 84 cents, and the charges should have been $100. The Supreme Court of the United States, in an opinion by Mr. Justice Brewer, held that plaintiff was not entitled to recover because the Interstate Commerce Act superseded the Texas statute which prohibited a common carrier from charging or collecting from the owner or consignee of freight a greater sum than that specified in the bill of lading.

The Supreme Court, in the case of T. & P. R. Co. v. Mugg & Dryden, 202 U. S. 242, 26 Sup. Ct. 628, 50 L. Ed. 1011, quoted with approval from the decision of the Supreme Court of Alabama in So. R. Co. v. Harrison, 119 Ala. 539, 24 South. 552, 43 L. R. A. 385, 72 Am. St. Rep. 936, the following language with reference to the effect of the decision in the Hefley Case:

"The clear effect of the decision was to declare that one who has obtained from a common carrier transportation of goods from one state to another at a rate, specified in the bill of lading, less than the published schedule rates filed with and approved by the Interstate Commerce Commission, and in force at the time, whether or not he knew that the rate obtained was less than the schedule rate, is not entitled to recover the goods, or damages for their detention, upon the tender of payment of the amount of charges named in the bill of lading, or of any sum less than the schedule charges; in other words, that whatever may be the rate agreed upon, the carrier's lien on the goods is, by force of the act of Congress, for the amount fixed by the published schedule of rates and charges, and this lien can be discharged, and the consignee can become entitled to the goods only by the payment, or tender of payment, of such amount. Such is now the supreme law, and by it this and the courts of all other states are bound."

Illinois C. R. Co. v. Henderson Elev. Co., 226 U. S. 441, 33 Sup. Ct. 176, 57 L. Ed. 290, is in point. The plaintiff there brought its action to recover damages from the Illinois Central Railroad Company because of a loss alleged to have been sustained by an erroneous quotation by the agent of the railroad company of their rate on corn shipped in interstate commerce from the station of the company at Henderson, Ky. A rate of 10 cents per hundred pounds was quoted, when the rate as fixed by the tariff on file with the Interstate Commerce Commission and effective at the time was 13½ cents per hundred pounds. Trial in the state court resulted in verdict and judgment for plaintiff, which judgment was affirmed by the Court of Appeals of Kentucky. 138 Ky. 220, 127 S. W. 779. The case was reversed, and the

syllabus to the opinion of the Supreme Court is as follows:

"The erroneous quotation, by the agent of an interstate railway carrier, of a lower freight rate for an interstate shipment than the rate fixed by the published tariff on file with the Interstate Commerce Commission, gives no right of action to a shipper who sustains injury by acting on the faith of the quoted rate, although such tariff was not posted or on file in the carrier's local station."

Discussing this same question, in K. C. S. R. Co. v. Carl, 227 U. S. 639, 33 Sup. Ct. 391, 57 L. Ed. 683, the court said:

"Neither the intentional nor accidental misstatement of the applicable published rate will bind the carrier or shipper. The lawful rate is that which the carrier must exact and that which the shipper must pay. The shipper's knowledge of the lawful rate is conclusively presumed, and the carrier may not be required to surrender the goods carried upon the payment of the rate paid, if that was less than the lawful rate, until the full legal rate has been paid. T. & P. R. Co. v. Mugg, supra."

In M., K. & T. v. Harriman, 227 U. S. 669, 33 Sup. Ct. 397, 57 L. Ed. 697, that court said that the shipper was compelled to take notice of the rate sheets contained in the tariff schedule, not only because referred to in the contract signed by both, but because they had been lawfully filed and published.

In the late case of L. & N. R. R. Co. v. Maxwell, 237 U. S. 94, 35 Sup. Ct. 494, 59 L. Ed. 853, L. R. A. 1915E, 665, error was prosecuted from a judgment of the Supreme Court of Tennessee affirming a judgment in favor of defendant in a suit by a carrier to recover an alleged undercharge on the sale of interstate railway tickets. The case was reversed and remanded, and in the opinion the court said:

"Under the Interstate Commerce Act, the rate of the carrier duly filed is the only lawful charge. Deviation from it is not permitted upon any pretext. Shippers and travelers are charged with notice of it, and they as well as the carrier must abide by it, unless it is found by the commission to be unreasonable. Ignorance or misquotation of rates is not an excuse for paying or charging either less or more than the rate filed. This rule is undeniably strict, and it obviously may work hardship in some cases, but it embodies the policy which has been adopted by Congress in the regulation of interstate commerce in order to prevent unjust discrimination."

The lawful rate between the two points, as shown by the evidence, was 28 cents, instead of 22½ cents, as charged by the agent at Denning, and there was due upon said shipment when it reached its destination at Vian, Okla., a difference of $11, which defendant was entitled to collect. The fact that its agent had misquoted the rate at Denning was not binding, and plaintiff was not by reason thereof entitled to the delivery of his property until he had paid the lawful charge. If the agreement was knowingly entered into by plaintiff and the agent of defendant, this would constitute a violation of the provisions of the Interstate Commerce Act of which neither party could take advantage, and, if entered into ignorantly or through mistake, it would make no difference so far as the right of defendant to retain the property and recover the lawful charge was concerned. Ill. Cent. R. Co. v. Segari & Co. (D. C.) 205 Fed. 998; Cent. R. Co. v. Mauser, 241 Pa. 603, 88 Atl. 791, 49 L. R. A. (N. S.) 92; St. L. S. W. R. Co. v. Gramling, 97 Ark. 353, 133 S. W. 1129; Houseman v. Fargo (Sup.) 124 N. Y. Supp. 1086; Pa. R. Co. v. Titus, 156 App. Div. 830, 142 N. Y. Supp. 43; L. & N. R. R. Co. v. Allen, 152 Ky. 145, 153 S. W. 198; N. Y., N. H. & H. R. Co. v. York & Whitney Co., 215 Mass. 36, 102 N. E. 366; La. R. & Nav. Co. v. Holly, 127 La. 615, 53 South. 882; Cent. of Ga. R. v. Birmingham Sand & Brick Co., 9 Ala. App. 419, 64 South. 202; Nort. Ala. R. Co. v. Wilson Mer. Co., 9 Ala. App. 269, 63 South. 34; Georgia R. R. v. Creety, 5 Ga. App. 424, 63 S. E. 528; B. & O. S. W. R. Co. v. New Albany Box & Basket Co., 48 Ind. App. 647, 94 N. E. 906, 96 N. E. 28; M., K. & T. R. Co. v. Trinity Co. Lbr. Co., 1 Tex. Civ. App. 553, 21 S. W. 290; Pecos Valley & N. E. R. Co. v. Harris, 14 N. M. 410, 94 Pac. 951; A., T. & S. F. R. Co. v. Superior Ref. Co., 83 Kan. 732, 112 Pac. 604; Railroad Co. v. Thisler, 90 Kan. 5, 133 Pac. 539.

At the trial the court permitted the plaintiff, McNabb, to testify as to certain conversations or statements made by the agent at Denning, and Vian, with reference to the tariff in force fixing the legal charge upon the shipment in question. The admission of this evidence was error. C., R. I. & P. R. Co. v. Champlin Lbr. Co., 47 Okla. 430, 149 Pac. 119.

The court instructed the jury that, if the agent at Vian demanded more than was legally due and refused to accept less than the rate provided by the published tariffs on file, this relieved the plaintiff from making a tender of any amount that might be found due. This was error. By section 847, Rev. Laws 1910, it is provided: "A carrier has a lien for freightage, which is regulated by the chapter on liens." And in section 3852, Rev. Laws 1910, a carrier who, while lawfully in possession of personal property, has rendered any service to the owner in the carriage thereof, has a special lien thereon dependent on possession for the compensation due him

for such services.   Section 3845, Rev. Laws 1910, provides:

"The partial performance of an act secured by a lien does not extinguish the lien upon any part of the property subject thereto, even if it is divisible."

In Cobbey on Replevin (2d Ed.) sec. 514, it is said:

"Where goods were shipped by rail, the railway company having obtained possession lawfully will have the right to hold them until the freight actually due is paid or tendered, and a demand is made.  If too much freight is charged the owner should tender the proper amount before bringing replevin." K. C. S. R. Co. v. Carl, supra; Texas & Pac. R. Co. v. Mugg & Dryen, supra.

It follows therefore that plaintiff was not entitled to recover possession of the property until the payment of the lawful amount due thereon, as shown by the published tariff, and that defendant was entitled to retain the possession thereof until payment or tender of said amount, and the court erred in the instructions given and in refusing defendant's requests upon this proposition.

The case is reversed and remanded for further proceedings in accordance herewith.

All the Justices concur.