MARVIN, Judge.
The issue in this case is factual: Was there a prior sale of 100 shares of corporate stock to the appellant before plaintiff Be-langer sold 40 shares thereof to his five co-plaintiffs? The trial court answered no. We affirm.
In 1973, Belanger owned 100 shares of the capital stock of the defendant corporation (ETSC). In September, 1973, Belanger was dissolving various business associations he maintained with two other gentlemen in another corporation. A formal contract was executed to accomplish this but this contract did not mention Belanger’s stock in ETSC, although the contract was executed at ETSC offices in Shreveport. At that *182 time, A. C. Black, appellant, purchased 2,200 shares of ETSC stock for $2.25 per share from one Jules LaMothe, who was one of Belanger’s associates. Black contends that Belanger agreed at that time to sell Black his 100 shares of stock at the same price but that Belanger has since refused to transfer the stock.
In November, 1973, Black notified ETSC that he had purchased Belanger’s stock and instructed ETSC to transfer ownership to Black when Belanger forwarded the share certificate to ETSC.
About one year later, ETSC received written direction from Belanger to transfer and apportion Belanger’s 100 shares among the six plaintiffs in various share amounts. When ETSC informed Belanger of Black’s earlier notification and of its refusal to make the transfer as Belanger directed, Be-langer and the other plaintiffs brought suit against ETSC to compel the transfer. ETSC converted this action into a concursus proceeding, alleging the conflicting claims of plaintiffs and of Black. Black then formally appeared and proceeded to litigate the issue.
Black contended below and contends here that the “sale” of Belanger’s stock was complete or “perfect” when there existed in September, 1973, a verbal “agreement” between him and Belanger for Black to purchase the 100 shares at $2.25 per share. La.C.C. Art. 2456. The trial court found that Black did not prove by a preponderance of the evidence that there was such an agreement and rejected his demands.
Four witnesses were called by Black, none of which were present at the time and place with Black and Belanger when the “sale” allegedly occurred. Belanger repeatedly denied agreeing to sell the 100 shares to Black and showed that Black had repeatedly pestered or bothered Belanger on several occasions in an attempt to get Belanger to agree to sell the stock to him at any price. The trial court expressly noted the “balance [of the evidence] is pretty close” and that it was “not satisfied” by a preponderance of the evidence that Belan-ger agreed in September, 1973, to sell his stock to Black.
We cannot say the trial court erred in weighing the evidence. The record presents a reasonable factual basis for the trial court’s conclusions. See Jamison v. Liberty Mutual Ins. Co., 338 So.2d 179 (La.App.2d Cir. 1976) and Ritter v. Leigh & Wiggins, Inc., 337 So.2d 281 (La.App.2d Cir. 1976).
At appellant’s cost, judgment is
AFFIRMED.