MARVIN, Judge.
Defendant appeals from a judgment in favor of plaintiff who sued for wages for work done by plaintiff and plaintiff’s 15- *1208 year-old son on defendant’s cattle farm. The litigation stems from a misunderstanding between the parties as to the basis upon which defendant was to pay for the work performed.
Before 1975, plaintiff worked for several years for defendant as a farm laborer. He periodically reported his time to defendant and was paid $2.00 an hour. Early in 1975, plaintiff — an uneducated, unaffluent laborer — expressed a desire to have some cows of his own before he got too old to work. Defendant offered him the opportunity of earning through his labor, an interest in the small herd of cows (less than 100) defendant kept on his 200-acre farm with less than 150 acres in pasture.
Plaintiff apparently misunderstood the offer and thought he would receive a specific number of cows at the end of every year, based on the hours worked. When the misunderstanding became heated in January, 1976, defendant formally terminated plaintiff’s employment as a farm laborer and as a janitor and handyman in a nursing home managed by defendant in Coushatta. Plaintiff then brought suit for the hours worked during the preceding ten months by him and his own son on defendant’s farm. Defendant contested plaintiff’s demands, contending the number of hours claimed by plaintiff were fabricated and grossly exaggerated; that he had never agreed to employ plaintiff’s son, but had forbidden most of the son’s activity around the farm and particularly the operation of machinery thereof; and that in any event, defendant should receive credit for sums paid and for two slaughtered calves given to plaintiff for his consumption during the time in question.
Plaintiff produced a calendar on which he claimed to have written each day the number of hours worked by himself and his son and the general area of work (“cow, hay, fence,” etc.). Neighbors testified as to the general activity of defendant and his son on the farm.
Defendant showed that some of the chores plaintiff and his son claimed to have done could have been performed in fewer hours than plaintiff claimed; that on one or more days when mowing was claimed to have been done, it was raining; and that on many days, the hours of daylight remaining after 3:00 p. m. (when plaintiff left the nursing home to change clothes and drive five miles to the farm to work), exceeded the number of hours claimed by plaintiff. Plaintiff recorded the time alleged to have been worked only in hours and not in fractions thereof, claiming that if he only worked a fractional part of an hour he did not charge defendant.
In short, plaintiff recorded 765 hours for himself and 442 hours for his son, a weekly average of approximately 30 hours between them, or about 20 hours average for plaintiff and 10 hours average for his son. Defendant attempted to reconstruct the hours plaintiff should or could have worked, and reached a total exceeding 250 hours.
The lower court saw and heard the witnesses and resolved the factual disputes and contradictions in the testimony against defendant. The lower court noted defendant’s admission that there was no definite agreement but that at the end of the year the value of plaintiff’s services would be determined and plaintiff would be given a proportionate interest (a “percentage”) of the herd of cattle. This interest or percentage, indefinite in the beginning, was to be negotiated at the end of the year.
Defendant complains on appeal that the lower court erred in not considering defendant’s evidence in defense, but rejecting it and holding in effect that defendant was barred or estopped from contesting the hours plaintiff claimed to have been worked. This complaint arises from this language in the trial court’s reasons for judgment:
“For more than four years prior to 1975, [defendant] had accepted the day-to-day record kept by [plaintiff] of the time he and his son . . . worked on the farm . . . Since this was an acceptable method, this Court finds it should be acceptable in the time here in question.”
We do not interpret the lower court’s language to mean that no consideration what *1209 ever was given to defendant’s evidence and that defendant was legally estopped to contest the number of hours plaintiff claimed as time worked. Our review of the record and the entirety of the lower court’s reasons for judgment convinces us that the lower court performed its duty by considering all evidence and in assigning appropriate weight thereto. The lower court’s written reasons for judgment expressly mentions the several contentions of defendant and generally summarizes evidence defendant offered in support of the same.
Defendant also complains that he should be allowed credit for $169.00 paid plaintiff during the time in question. The record shows, however, that defendant periodically paid plaintiff by the hour for mechanical or welding work done by plaintiff, as opposed to plaintiff’s work as a farm laborer. In essence, defendant’s complaints relate to the lower court’s assigning more weight to plaintiff’s evidence than to defendant’s. This is within the discretion afforded a trial court in the performance of its duty which shall not be disturbed in the absence of manifest error. Belanger v. East Texas Service Corporation, 338 So.2d 181 (La.App. 2d Cir. 1976).
During the time in question, plaintiff had slaughtered two calves for his personal use at defendant’s authorization. Defendant recited a portion of the conversation between himself and plaintiff early in 1975 as follows:
“He [plaintiff] said, ‘By the way, Doc, I won’t be getting any cows now, for a while, is that right?’ I [defendant] said, ‘That’s right.’ He said, ‘What about me getting one yearling to put in my freezer in the fall?’ I said, ‘. . . you can get a yearling every time you eat one up, that’s no problem, you know, we will just give you all you want for the deep freeze.’ He said, ‘Well, that just suits me fine, I’ll just be glad to get some meat for my deep freeze.’ ”
Civil Code Art. 1523 reads:
“There are three kinds of donations inter vivos:
“The donation purely gratuitous, or that which is made without condition and merely from liberality;
“The onerous donation, or that which is burdened with charges, imposed on the donee;
“The remunerative donation, or that the object of which is to recompense for services rendered.”
A manual gift of a movable (complete upon delivery), may fall into any one of the three categories of donations.[1] See C.C. Art. 1539, Ackerman v. Larner, 116 La. 101, 40 So. 581 (1906). At the time defendant authorized plaintiff to slaughter calves for his deep freezer, defendant may have intended that he receive credit at the end of the year for calves slaughtered by plaintiff when the ultimate accounting was made and plaintiff’s “interest” in the herd negotiated. We may speculate that his authorization to plaintiff was intended as a fringe benefit of employment. Defendant’s recitation of the early 1975 conversation does not reveal his intent.
In any event, we uphold the result below whether defendant’s donation of the slaughter calves was a pure gratuity, or was intended as an onerous transfer, because in the latter instance, defendant’s own testimony shows he neglected to clearly impose whatever conditions he may have intended in verbally authorizing plaintiff to have the calves slaughtered for personal consumption.
We find no manifest error. At appellant’s cost, judgment is
AFFIRMED.

. Professor Oppenheim has suggested that remunerative or onerous donations, which are not subject to the rules of donations if they do not meet the formula of C.C. Art. 1526, “. might be more properly referred to as onerous or remunerative transfers." 43 T.L.R. 731, 754.